## JARRELL v. THE STATE.

CRIMINAL LAW.—*Indictment.—Motion to Quash.—Practice.*—A motion to quash an indictment consisting of several counts, addressed jointly to all, should be overruled, if any one of them is sufficient.

SAME.—*Assault and Battery With Intent.—Words and Phrases.*—An averment in an indictment for assault and battery with intent to murder, that the defendant wounded the injured party by "shooting" him with a pistol loaded with gunpowder and leaden balls, is equivalent to an averment that the injured party was hit by the substance with which the pistol was loaded.

SAME.—*Manslaughter.*—Under an indictment for an assault and battery with intent to murder, the defendant may be convicted of assault and battery with intent to commit manslaughter.

SAME.—*Instruction to Jury.—Reasonable Doubt.*—On the trial of the defendant in such case, the court instructed the jury, that "Evidence is sufficient to remove reasonable doubt, when it is sufficient to convince the judgment of ordinarily prudent men with such force that they would act upon that conviction, without hesitation, in their own most important affairs."

*Held,* that the instruction is correct.

SAME.—*Harmless Error.*—An instruction to the jury in such case, as to what it is necessary for the State to prove, to convict the defendant of assault and battery with intent to murder, or as to the "sudden heat" reducing the killing to manslaughter, though erroneous, is not available as ground for a new trial, where he is convicted of an assault and battery with intent to commit manslaughter only.

SAME.—*Retreat of Injured Party.*—Where, on the trial of such action, it appears that the injured party, being unarmed, had, after attacking the defendant, fled for safety from the defendant who was armed, and also aided by another, it is not available as cause for a new trial, that an instruction to the jury, in relation to the duty of the defendant when the injured party had retreated, did not refer to the fact as to whether such retreat was or was not made in "good faith."

SAME.—*Separation of Jury.—Sealing up Verdict.*—Where such cause has gone to the jury, they may, under the order of the court, if no objection be

made by the defendant, seal up a verdict found by them during an adjournment for the day, separate, reassemble on the meeting of court, and then return their verdict.

SAME.—*Trial by Affidavit.*—Where, in such case, the question as to whether or not such order was made in the hearing of the defendant and his counsel is raised by the affidavit of the defendant only, counter affidavits are admissible on behalf of the State, showing such order to have been audibly made, in the presence of the defendant and his counsel.

From the Boone Circuit Court.

*S. H. Buskirk, J. W. Nichol* and *W. B. Walls,* for appellant.

*C. A. Buskirk,* Attorney General, for the State.

PERKINS, J.—Henry Jarrell was indicted in the Boone Circuit Court.

The indictment contained two counts.

The first charged, that said " Henry Jarrell, on the 20th day of October, A. D. 1877, at the county and State aforesaid, did then there unlawfully, feloniously, purposely and with premeditated malice, in a rude, insolent and angry manner, unlawfully touch, strike, beat and wound one James H. Gilbert, by then and there unlawfully, purposely, feloniously and with premeditated malice, shooting said James H. Gilbert, with a certain pistol, which said pistol was then and there loaded with gunpowder and leaden balls, and which said pistol, he, the said Henry Jarrell, in his hand then and there held, with intent then and there and thereby him, the said James H. Gilbert, unlawfully, purposely, feloniously and with premeditated malice to kill and murder, contrary," etc.

The second count charged, " that, on the 20th day of October, 1877, at the county of Boone and State of Indiana, Henry Jarrell did then and there unlawfully and feloniously make an assault upon one James H. Gilbert, and him, the said James H. Gilbert, in a rude, insolent and angry manner, did then and there unlawfully and feloniously touch, strike, beat and wound, by then and there shooting at and against the said James H. Gilbert,

with a certain pistol, which said pistol, he, the said Henry Jarrell, then and there had and held in his hand, and which said pistol was then and there loaded with gunpowder and leaden balls, with intent then and there and thereby him, the said James H. Gilbert, unlawfully, feloniously, maliciously and with premeditated malice to kill and murder, contrary," etc.

A motion to quash the indictment was overruled. The defendant was convicted by a jury of assault and battery with intent to commit manslaughter, and his punishment fixed at two years' imprisonment in the state-prison, etc.

Motion for a new trial denied, and judgment.

It is assigned, in this court, for error:

1st.  That the court below erred in receiving counter affidavits;

2d   That the court erred in overruling the motion to quash; and,

3d.  That the court erred in overruling the motion for a new trial.

As the motion to quash was addressed to both counts, jointly, and as the second one is admitted to be good, no error was committed in overruling the motion to quash. No motion in arrest was made.

The objection to the first count is, that, while it avers that Jarrell wounded Gilbert by shooting him with a pistol, it does not aver that he hit him.  Our statute enacts, that " Words and phrases will be taken in their plain, or ordinary, and usual sense.  But technical words and phrases having a peculiar and appropriate meaning in law, should be understood according to their technical import."  2 R. S. 1876, p. 315.

The word " shooting" is not a technical word, and, in its usual sense, the phrase, " shooting a person," means that the person was hit by the substance with which the gun or pistol was loaded.  The first count in the indictment was good.

The point is made that a conviction for an assault and

battery with an intent to commit manslaughter is impossible. The contrary is decided in *The State* v. *Throckmorton*, 53 Ind. 354, and we adhere to that decision.

The court gave the following instructions to the jury, to which exceptions were properly reserved :

"Eighth.   Evidence is sufficient to remove reasonable doubt, when it is sufficient to convince the judgment of ordinarily prudent men of the truth of a proposition, with such force that they would act upon that conviction, without hesitation, in their own most important affairs.

"Ninth.   To justify an assault and battery with intent to commit murder in the first degree, the State must prove beyond a reasonable doubt, that the defendant, at the time and place mentioned in the indictment, shot James H. Gilbert with a pistol, which defendant then held in his hand; that said pistol was loaded with gunpowder and leaden balls; that such shooting was unlawfully and maliciously done, with intent to murder said Gilbert; and that said shooting and intent to kill were premeditated, on the part of the defendant.   To justify a conviction of an assault and battery with intent to commit murder in the second degree, the like facts, except the premeditation, must be proved.

"Thirteenth.   If any person is attacked, he may lawfully repel that attack, if he use no more force than is necessary to repel it; but, when the attacking party ceases his attack and leaves the scene of action, the attacked party can not lawfully follow his antagonist, and strike or shoot him; and, if he do so, he will be guilty of an assault and battery, if nothing more, provided such striking is done in an angry, rude or insolent manner.

"Fourteenth.   The sudden heat, which will rebut the necessary or proper implication of malice, and reduce a homicide from murder in the second degree to manslaughter, must arise upon a sufficient legal provocation. No words will be sufficient provocation to reduce homicide from murder to manslaughter.   There must be con-

siderable personal violence; or, if the personal violence be slight, it must be accompanied with circumstances of insult and indignity; and in all cases, to reduce a homicide upon provocation to manslaughter, it is essential that the fatal blow be inflicted immediately upon the provocation given; for, if there be sufficient time for passion to subside, and then the person provoked kill the other, this will be deliberate revenge, and not heat of blood. It will be murder."

The eighth instruction, above copied, substantially expresses the law as laid down in the case of *Bradley* v. *The State*, 31 Ind. 492, on page 505. It states, that, to exclude reasonable doubt, the evidence must be such as to produce, in the minds of prudent men, such certainty that they would act upon the conviction produced, without hesitation, in their own "most important" affairs. In the Bradley case, the court say it must be such that it would justify such action in matters of the "highest import." The most important affairs are those of the highest import.

The ninth instruction did the defendant no harm, as he was convicted only of an intent to commit manslaughter.

The same may be said of the fourteenth instruction.

The objection to the thirteenth instruction is, that it does not contain the qualification that the leaving of the scene of action was in good faith. If, in any case, the instruction should contain such qualification, it is clear to us, that, as applicable to the present case, it was unnecessary. The circumstances under which the shooting occurred showed sufficiently, that the retreat of Gilbert was for self-security, not preparation to attack. Jarrell and Gilbert were engaged in a scuffle. On the approach of Jarrell's brother, Gilbert fled and sought safety in a neighbor's house. He was unarmed and unsupported. Jarrell was armed with a shotgun and revolver, and supported by his brother. When Gilbert fled, Jarrell pursued and shot

him while fleeing. Gilbert never returned to renew the scuffle.

Another point: The bill of exceptions states, that, after the case was given to the jury, "The court, within hearing of the defendant and of his counsel, and without asking defendant's consent, and without his giving it, directed the jury, if they found a verdict before the calling of the court to-morrow morning, to seal it up in an envelope, the foreman to write his name across the seal, and then separate and come into court in the morning at eight and a half o'clock." The jury did agree upon a verdict, at 2 o'clock A. M., sealed it as directed by the court, separated till the hour of the meeting of the court on the following morning, when they appeared therein and returned their verdict. Neither the defendant nor his counsel made any objection to the action of the court in this matter till the day following the return of the verdict.

On that day the defendant made an affidavit that he did not hear the direction of the court. Counter affidavits, showing that the defendant and his counsel were sitting near the court when the direction to the jury was given, that it was given clearly and distinctly, in a voice audible throughout the court-room, and heard generally, etc. were received and read by the court, over defendants objection, etc.

It is not pretended, that there was any improper conduct on the part of the jury. The attorneys of the defendant make no affidavit that they did not hear the direction of the court to the jury. The counter affidavits, we think, were properly enough received by the court.

In our opinion, there was no error in the above rulings. There is no statute in this State prohibiting the court to allow, on the trial of crimes not capital, the jury to separate temporarily at any time during the trial. And it is held in *Barlow* v. *The State*, 2 Blackf. 114, that the separation of the jury during trial, without the leave of the

court, where no other misconduct is shown, is not ground for a new trial. This case is fully supported by *The People* v. *Douglass*, 4 Cow. 26, where the question is examined and the cases cited. See note to *Barlow* v. *The State, supra.*

If the court had the power to permit the separation, without the consent of the prisoner, there was, of course, no error in this point.

If it had not such power without the consent of the prisoner, then we think the court was right in inferring that consent from the facts in this case. See Bicknell Crim. Prac., p. 147, *et seq.*

Affirmed, with costs.