# SUPREME COURT OF JUDICATURE

### OF THE

# STATE OF INDIANA,

## AT INDIANAPOLIS, MAY TERM, 1883, IN THE SIXTY-SEVENTH YEAR OF THE STATE.

---◆---

11,012.

### STOUT v. THE STATE.

PRACTICE.—*Filing Bill of Exceptions.*—*Certificate of Clerk.*—It sufficiently appears that a bill of exceptions was filed within the time limited, if the certificate of the clerk authenticating the transcript containing it bears date within the time.

CRIMINAL LAW.—*Poor Person.*—*Power of Supreme Court.*—The Supreme Court has no authority to appoint or pay an attorney to prosecute an appeal for a defendant in a criminal case, and an attorney so appointed by the court below has full authority to prosecute the appeal.

SAME.—*Cause for New Trial.*—That the court admitted "irrelevant, incompetent and immaterial evidence," or rejected "competent, material and relevant evidence," will not be sufficiently specific as causes for a new trial, to present any question; so, also, that the court refused to permit the defendant to prove by A., B., C., and other competent witnesses, "the diseased condition of his mind at the time of and before the homicide."

SAME.—*Competency of Juror.*—*Constitutional Law.*—Section 1793, R. S. 1881, is constitutional, and a juror having an opinion based only on rumor or newspaper statements, but who says upon oath that he can give an impartial verdict on the evidence, may, in the discretion of the trial court, be sworn as a juror, and in such case the Supreme Court will reverse only where it appears that this discretion has been abused.

SAME.—*Practice.*—The jury may properly have the indictment when retired to consider of their verdict.

SAME.—*Instructions.*—A statement by the court to the jury, that the venue of the cause has been changed from another county, is harmless to the defendant, as well as unobjectionable.

SAME.—*Evidence.*—On a trial for murder, a general instruction concerning the law of homicide, some parts of which have no application to the evidence, will not be available error, unless in the particular case it seems probable that it might have confused or misled the jury, and this can not be supposed where the verdict is clearly right upon the evidence.

SAME.—*Manslaughter.*—An instruction, that "Voluntary manslaughter is the unlawful killing of a human being, without malice, express or implied—voluntary, upon a sudden heat, *as upon adequate provocation the passion has been aroused,* and the fatal act is unlawfully and voluntarily committed before sufficient time has elapsed to allow the passion to cool and for reason to resume its sway," is not erroneous.

SAME.—*Reasonable Doubt.*—*Jarrell* v. *State,* 58 Ind. 293, followed as to what is a reasonable doubt.

SAME.—A careful and impartial admonition to the jury of the importance of the cause, in a trial for murder, as well to the rights of the defendant as to the interests of society, is not error.

SAME.— *Verbal Inaccuracies.*—An instruction containing, by evident inadvertence or clerical error, a word which is merely inaccurate, as the use of " description " instead of " discretion," but which could not possibly mislead, is not available error.

From the Parke Circuit Court.

*J. R. Courtney,* for appellant.

*F. T. Hord,* Attorney General, *F. M. Howard,* Prosecuting Attorney, *J. H. Burford, G. W. Paul, M. D. White* and *J. E. Humphries,* for the State.

NIBLACK, C. J.—This was a prosecution for murder in the first degree, originating in the Montgomery Circuit Court,. from which a change of venue was taken to the Parke Circuit Court. The indictment was in five counts, each charging the appellant, Joseph Stout, with having, on the 24th day of November, 1882, feloniously killed and murdered one Taylor Dunbar, in Montgomery county. Upon several motions to quash each count, all the counts of the indictment were held to be sufficient. Trial by jury ; verdict finding the defendant guilty of murder in the first degree, as charged in the first count of the indictment, and fixing the punishment at death..

Stout v. The State.

After considering and severally overruling motions for a new trial and in arrest of judgment the court rendered judgment upon the verdict, naming the time and the place for the execution of the death sentence.

These latter proceedings were had on the 23d day of April, 1883, at which time sixty days time was given to the appellant in which to prepare and file bills of exceptions, making certain proceedings at the trial matters of record. Three bills of exceptions are copied into the transcript. One assumes to contain all the evidence given in the cause. Another contains certain special matters upon which questions were reserved during the progress of the trial. The third embraces the instructions given by the court to the jury. They all bear date, and purport to have been signed by the judge before whom the cause was tried, on the 23d day of May, 1883, but there is nothing in the transcript showing when they, or any of them, were filed, and for this reason counsel for the State make the point that these bills of exceptions are not properly in the record. It is a well recognized rule of practice in this court, that where time is given in which to prepare and file a bill of exceptions, the record must in some way affirmatively show that the bill of exceptions was filed within the time limited.

The transcript in this case was filed in this court on the 13th day of June, 1883, which was within the time limited for filing the bills of exceptions. The clerk's certificate to the transcript bears date the 7th day of that month, and certifies that the transcript to which it is attached "contains a full, true and complete transcript of the record, and all the proceedings and judgment of the court, and also the bills of exceptions in the case of the State of Indiana vs. Joseph Stout, No. 1053, indictment for murder, as the same are found on file and remain of record in my office."

According to the doctrine of the case of *Oliver* v. *Pate*, 43 Ind. 132, which we think was correctly decided, this certificate makes it appear affirmatively that the bills of exceptions in question were properly on file on the 7th day of June, 1883,

and that hence they were filed within the time limited by the court.

After this cause reached the Parke Circuit Court, the appellant made application to that court to be permitted to defend the proceedings against him as a poor person. This application was granted, and John R. Courtney, an attorney of that court, was appointed to conduct the defence for the appellant.

Upon his first appearance by counsel in this court, the appellant filed his application in writing, supported by his affidavit, to be permitted to prosecute this appeal as a poor person, and we have been asked to make formal ruling upon that application.

The subject of admitting litigants to prosecute or defend actions as poor persons is one over which this court has no original jurisdiction. We have no funds under our control out of which payment could be made for such services as those contemplated by section 260 of the present code.

The provisions of that section confer original and general jurisdiction only upon the *nisi prius* courts, and when a *nisi prius* court admits a litigant to prosecute or defend as a poor person, the privilege, unless revoked, extends to all the subsequent proceedings in the cause, including appeals to this court. Consequently, the privilege of defending as a poor person, granted to the appellant by the Parke Circuit Court, extends to the proceedings upon this appeal.

No question is made here upon the sufficiency of the indictment; hence, the question of its sufficiency has not been considered.

The appellant assigned as causes for a new trial:

*First.* That the verdict was contrary to law.

*Second.* That the verdict was not sustained by the evidence.

*Third.* That the court had permitted irrelevant, incompetent and immaterial evidence to be given to the jury to his prejudice and over his objection.

*Fourth.* That the court had excluded competent, material

and relevant evidence from the jury, to his, the appellant's, prejudice, all of which appeared by the reporter's notes of the proceedings at the trial.

*Fifth.* That the court erred in allowing incompetent evidence to be given to the jury, and afterwards orally instructing them not to consider the evidence thus given to them because of its incompetency.

*Sixth.* That the court had erred in refusing to permit him to prove by John Stout, Elizabeth Stout, Dr. Stowe S. Dechon, Joel Stout, Edward Bly and other competent witnesses, the diseased condition of his mind at the time of and prior to the homicide charged in the indictment, as well as the general condition of his mind at that time.

*Seventh.* That the court, after excluding all the evidence offered as to the condition of his, the appellant's, mind at the time of the homicide, had refused to permit him " to file the following special written plea in paragraphs" (here insert), " to which ruling" an exception was at the time reserved.

*Eighth.* That the court had permitted the jury, upon retiring to consider of their verdict, to take with them the entire indictment, consisting of five counts, after the prosecuting attorney had in open court elected to stand upon the first and second counts only.

*Ninth.* That the court had erred in overruling his challenges for cause, on account of prejudice and opinion formed, to each of the following persons called as jurors, to wit: John Pence, J. H. Martin, D. McMullen and Frank Brown.

*Tenth.* That the court had erred in giving instructions to the jury from one to nineteen, both inclusive.

No argument is submitted in support of the first and second causes for a new trial assigned as above, and the third, fourth, fifth and seventh causes are too general and indefinite to present any question for our decision. As a reference to it will show, the seventh cause for a new trial does not set out the plea which the appellant asked leave to file, nor does it refer

to or identify the plea in any other such a way as to make it a part of that cause for a new trial.

The questions reserved by the ninth cause for a new trial ought, in their natural order, to be first considered, in connection with the refusal of the court to grant a new trial.

John Pence, upon being sworn to answer questions as to his qualifications as a juror, said that he had formed an opinion as to the merits of the cause; that his opinion was formed from reading the Rockville newspapers, and talking with some of his neighbors; that he had never talked with any of the witnesses in the cause, or with any one who knew any of the facts connected with it; that he had no personal knowledge of the case in any way, and did not know any of the witnesses or parties. He was then asked if he felt able, notwithstanding his opinion thus formed, or any opinion he might have expressed, to render an impartial verdict upon the law and the evidence in the cause. To this he answered, "I judge not."

Acting seemingly upon the theory that Pence had not fully understood this last question, the prosecuting attorney propounded substantially the same question to him in a different form, to which he answered, "I feel able so far as I know about it."

He further said that he had no bias or prejudice against the appellant, and that he thought he could give him a fair trial upon the law and the evidence. He still further answered that it might require some evidence to change the opinion he had formed, but that if the facts as shown by the evidence should prove to be different from the statements upon which he had predicated his opinion, he thought his opinion as already formed would not influence his verdict.

Martin, McMullen and Brown severally answered under oath that they had formed opinions about the case, either from rumor merely or from reading the newspapers; that they had no bias or prejudice against the appellant, and that they thought they could give him a fair and impartial trial.

The answers of these last named persons, severally consid-

·ered, were less objectionable as regards their competency than were those of Pence. The court held them all, including Pence, to be competent jurors.

All the decisions of this court touching the competency of jurors, to which we are referred by counsel, were made under the criminal code of 1852, which was materially different from, and much less liberal than, the corresponding provision on that subject found in the criminal code of 1881, now in force.

This last named provision, constituting a part of section 1793 of the R. S. of 1881, is as follows:

" The following, and no other, shall be good causes for challenge to any person called as a juror in any criminal trial: * * * * * *  *Second.* That he has formed or expressed an opinion as to the guilt or innocence of the defendant. But if a person called as a juror state that he has formed or expressed an opinion as to the guilt or innocence of the defendant, the court or the parties shall thereupon proceed to examine such juror on oath as to the ground of such opinion; and if it appear to have been founded upon reading newspaper statements, communications, comments, or reports, or upon rumors or hearsay, and not upon conversations with witnesses of the transaction, or reading reports of their testimony, or hearing them testify; and the juror state on oath that he feels able, notwithstanding such opinion, to render an impartial verdict upon the law and evidence, the court, if satisfied that he is impartial and will render such verdict, may, in its discretion, admit him as competent to serve in such case."

Under this provision of the statute of 1881, we see no objection to the competency of any one of the four persons above named and called as jurors in this case; at all events the facts presented by the answers of each one of those persons raised a question for the decision of the court in connection with the general appearance and the demeanor of the proposed jurors, and concerning which the provision, quoted as above, confers a judicial discretion, and there is nothing

disclosed from which we can infer any abuse in this case of the discretion thus conferred.

A murder case was recently tried in the State of Colorado in which one of the jurors who tried the cause, when he was called, stated that he had formed some opinion as to the guilt or innocence of the defendant; that he had formed his opinion from reports merely, and that it would require evidence to remove the opinion he had formed; that he, however, knew of no reason why he could not render a fair and impartial verdict according to the law and the evidence.

Upon an appeal the Supreme Court of that State said, amongst other things, in brief, that the question whether a juror has such an opinion as will require evidence to remove it, is one quite commonly propounded by attorneys; but is no certain or proper test of a juror's qualifications; that no rational person has an opinion upon any subject which is changed or removed except by evidence of some kind; that the time has gone by, if it ever existed, when a juror is held to be disqualified merely because he has heard or read something about the case he is called to try, and is intelligent enough to have formed some opinion about what he has heard or read; that in such a case the proper test is, can and will the juror render a fair and impartial verdict, according to the evidence to be adduced at the trial, regardless of his preconceived opinion? that if he can and will so decide upon the evidence, there is no ground for sustaining a challenge on account of any opinion he may have previously formed. *Jones* v. *State*, 16 Cent. L. J. 409.

These remarks are in evident accord with the spirit and meaning of section 1793, *supra*, of our present criminal code, and are for that reason applicable to the case before us. It may be said that the answers of Pence were not in all respects as positive and explicit as might have been desirable, but, taking them all together, they impress us as having afforded a reasonable assurance that he was both able and willing to

Stout *v.* The State.

render an impartial verdict. See, also, *Greenfield* v. *People,* 74 N. Y. 277.

At the trial John Stout, the father of the appellant and on his behalf, testified that the appellant had been subject to occasional attacks of epilepsy all his life. Other witnesses were then called to further testify on the same subject, and as to the nature and frequency of those attacks, but their testimony was excluded. Dr. Dechon, a practicing physician who had occasionally attended the appellant up to and as late as 1877, was also called as a witness by the appellant. He was asked, amongst other things, to explain what epilepsy is; the nature of the attacks with which the appellant had been afflicted; the effect which such attacks were liable to have upon the minds of those subject to them; also the condition of mind into which the appellant had been thrown by the disease, as well as the general mental condition of the appellant.

In connection with the enquiries made of this witness, as above enumerated, several separate and distinct propositions were submitted to the court as to matters expected to be proven by him, and in each case the proposed evidence was excluded. After this, however, the appellant, while testifying as a witness, was permitted to state the nature and extent of his affliction resulting from epilepsy, and the manner in which the disease had affected him, both physically and mentally.

As will be observed, the sixth cause for a new trial does not indicate any particular item of proposed evidence, making reference to the appellant's mental condition, as having been erroneously excluded. As applicable, therefore, to the various rulings made by the court touching the subject of the appellant's mental condition, the sixth cause for a new trial is too indefinite and uncertain to raise any question upon any particular item of, or proposition concerning, evidence which was rejected. In any event, the actual physical as well as the apparent mental condition of the appellant at the time of the homicide was either directly or otherwise brought to the attention of the jury by several witnesses, and in that respect

we are unable to perceive that the appellant has any substantial cause of complaint.

As regards the eighth cause for a new trial, it may be said that the prevailing doctrine is that the question of the submission of books and papers to the jury is one which rests largely, and sometimes entirely, in the discretion of the court. Whart. Crim. Law, sec. 3308. But in this State the discretion of the court in that respect is more limited than in some of the other States. *Nichols* v. *State, ex rel.,* 65 Ind. 512.

We, however, know of no exception to the general rule that the court may permit the jury to take with them the pleadings in the cause when they retire to their room for final consultation. Thomp. & Mer. Juries, sec. 387. This general rule necessarily includes the indictment and all the papers properly attached thereto in a criminal cause.

The only objection urged to the first instruction given by the court is that it told the jury that the venue of the cause had been changed from Montgomery county by the appellant. That instruction did not, however, in terms so inform the jury; it only told them that the cause was before them on a change of venue from Montgomery county by order of the Montgomery Circuit Court, omitting all reference to the causes or proceedings which induced the change. The court had judicial knowledge of the fact that a change of venue had been taken in the cause, and it was proper that the fact should be communicated to the jury so as the better to enable them to apply the evidence relating to the venue of the alleged homicide.

The eighth instruction is the next one objected to in its order, and it was as follows:

"Homicide is a general term, and signifies simply the killing of one human being by another or by others, and is either justifiable, excusable or felonious. It is justifiable when done in the execution of lawful authority, or by one who, having been guilty of no offence himself, in the necessary defence of himself, to avoid imminent danger, real or apparent, of death

Stout *v.* The State.

or great bodily harm. There are other cases of justifiable homicide, but their further specification is unnecessary. Homicide is excusable when it is committed by one of two persons who have mutually and voluntarily engaged in an unlawful combat without any felonious purpose; and after they have mutually so engaged, one of them having become dissatisfied with it, and desirous to withdraw from it makes that desire manifest by abandoning the combat and retreating from his adversary, who nevertheless pursues him until at last he is compelled, in the necessary defence of himself from great bodily harm or death, to turn upon and slay his adversary. In such case the law, while it does not regard the slayer as entirely innocent, because he at first voluntarily engaged in the contest, yet, inasmuch as he subsequently, and before the fatal blow was given, did all he could to repair his original faults, the law excuses him because of the necessity under which he was placed by the act of the deceased. All other grades of homicide, which it is important for you to consider, are felonious and are distinguished from those which are justifiable or excusable, by being unlawful, and in this State are included in two classes, viz., murder and manslaughter."

The complaint made against this instruction is that it had no practical application to the facts of this case, and that for that reason it was calculated to confuse and mislead the jury. Without enquiring whether this instruction was in all respects applicable to the case made by the evidence, we see no reason for holding that it was calculated to mislead the jury to the prejudice of the appellant.

The eleventh instruction was as follows: " Voluntary manslaughter is the unlawful killing of a human being, without malice, express or implied—voluntary, upon a sudden heat, as upon *adequate* provocation the passion has been aroused, and the fatal act is unlawfully and voluntarily committed before sufficient time has elapsed to allow the passion to cool and for reason to resume its sway."

It is insisted that the words " as upon adequate provocation,"

in the connection in which they are found, renders this instruction erroneous, insisting that where there is "adequate provocation" it is no crime to take human life.

It is true that the statute does not use the words objected to, nor equivalent words, in defining the crime of manslaughter. R. S. 1881, sec. 1908. But the words, as they are used in the instructions, are only illustrative of the kind of *sudden heat* necessary to reduce felonious homicide to manslaughter. The meaning evidently intended to be conveyed was that the *sudden heat* must be actual; that is, *as upon adequate provocation.* As thus construed and understood the instruction was not erroneous.

The fifteenth instruction given by the court reads as follows :

" Evidence is sufficient to remove a reasonable doubt when it convinces the judgment of an ordinarily prudent man of the truth of a proposition with such force that he would voluntarily act upon that conviction, without hesitation, in his most important affairs. If would be unsafe to convict any person of a felony when the facts proved and the supposition of guilt simply afford a solution of what would otherwise be mysterious; but when the facts proved are susceptible of explanation, upon no reasonable hypothesis, consistent with innocence, and point to guilt beyond any other reasonable solution, then they are sufficient to rest a conviction upon, although the crime is of the utmost malignity and the penalty attached is the highest known to the law. This principle should guide the jury in determining the degree of an offence, as well as the question as to whether the accused is guilty of any offence.

" When there is a reasonable doubt whether a defendant's guilt has been satisfactorily shown, he must be acquitted; and when there is a reasonable doubt in which of two or more degrees of an offence he is guilty, he must be convicted of the lowest degree only."

The appellant concedes that this instruction is fully supported by the case of *Jarrell* v. *State,* 58 Ind. 293, but nevertheless maintains that it does not state the law correctly on

Stout *v.* The State.

the subject of reasonable doubts in a criminal cause, and that, for that reason, the case of *Jarrell* v. *State, supra*, ought to be overruled.

No other or more specific objection is urged to the instruction, and we observe no substantial objection to it in our examination of it. We, therefore, assume that it was not erroneously given.

The eighteenth instruction given was the following:

" It is proper for the court to remind you that the issue in this cause is to the defendant of so grave a nature, and to the public safety of such vital importance, that upon your part there should be no error. The accused, if he be innocent, ought not to be erroneously convicted, and, on the contrary, if he be guilty, he ought not to be erroneously acquitted. You were, after careful effort, selected as intelligent and qualified jurors, sworn to impartially try and determine this cause, and a true verdict render according to the law and the evidence. If you comply with your oaths, error against either side must be precluded. Remember that the defendant's life and liberty are his most sacred and highest rights, and can only be forfeited by him for the causes, upon the conditions and in the manner prescribed by law. In considering his rights do not forget that by each acquittal of a guilty criminal the safeguard erected by society for its protection is weakened; for, by the non-enforcement of penalties affixed to criminal acts, contempt for the law is bred among the very class that it is intended to restrain. The evidence has been placed before you; an exhaustive discussion of the facts by counsel on either side, has been had in your hearing, and such instructions as in the judgment of the court would aid you in arriving at a correct decision have been given."

The appellant argues that this instruction in effect told the jury that he was a guilty criminal, and that public policy demanded his conviction. In our opinion the instruction can not have such a construction fairly placed upon it. The instruction, taken as a whole, constituted a careful and unob-

jectionable admonition to the jury of the importance of the cause they had been called upon to decide, considered first with reference to the rights of the appellant, and next to the interests of society, for the protection of which laws had been enacted. Both aspects of the case appear to us to have been fairly presented, and we see nothing in the instruction of which the appellant has any just cause of complaint.

A, merely verbal criticism is made upon the nineteenth and last instruction, in which the jury was told that in case they found the appellant guilty of murder in the first degree they might assess the penalty at death, or imprisonment in the State's prison during life, in their "description." The word "description," in the connection in which it is found in the record, is so obviously a clerical inadvertence, and so entirely meaningless in any application which can be given to it in that connection, that we regard its relation to the instruction as wholly immaterial. The instruction was sufficient independently of that word and those other words immediately preceding and dependent upon it, all of which may be regarded as mere surplusage.

We have gone carefully through the record, and find no cause for a reversal of the judgment.

The judgment is affirmed with costs.

### On Petition for a Rehearing.

Niblack, C. J.—The appellant complains that the construction we have given to the second clause of section 1793, of the Revised Statutes of 1881, is in violation of those provisions of the Constitution of this State and of the Constitution of the United States, which guarantee to every person prosecuted for a criminal offence a trial by an impartial jury.

While the clause in question differs very greatly in its phraseology from its corresponding provision in the criminal code of 1852, it amounts to little, if anything, more than a substantial re-enactment of the latter provision, with the constructions added which had been given to it from time to time

by the courts. The object of its enactment was to afford a well defined judicial method of ascertaining whether a person called to act as a juror is impartial within the meaning of the Constitution of the State as well as of the United States, and to declare what is necessary to constitute a person so called a competent juror, having reference to his impartiality in the cause.

The constitution does not assume to prescribe more than that a juror must be impartial, leaving it to the Legislature and to the courts to declare the condition of mind which constitutes impartiality as applied to persons called to serve as jurors.

The clause of section 1793, *supra*, as construed by us, and to which objection is made, is really in aid, and, consequently, not subversive, of the constitutional guaranties that a jury in a criminal cause shall be impartial.

It was insisted in argument that the bill of exceptions shows that only four persons were sworn as jurors in the cause, and that for that reason the verdict could not be sustained, and it is now objected that no reference was made to that point at the former hearing.

In the first place, the record of the trial, as made by the clerk, shows that twelve duly qualified persons were called and sworn as jurors to try the cause, and there is nothing contradictory of this recital in the bill of exceptions.

In the next place, no question was made upon the motion for a new trial either upon the organization or the legality of the jury, and hence there was no such question as that argued in the record. 1 Graham & Wat. New Trials, pp. 9 and 10.

A motion in arrest of judgment raises no question except upon the jurisdiction of the court and upon the sufficiency of the indictment. R. S. 1881, section 1843.

Other questions have been argued and incidentally considered, but what we have said practically disposes of every question fully and fairly presented by the record.

Counsel for the appellant has displayed great zeal and earnestness in the prosecution of this appeal, and the cause has

been ably and elaborately argued on behalf of the State as well as the appellant. We have given the cause that careful consideration which its importance has demanded. The evidence presents a most revolting case in its details, and appears to have fully justified the verdict. The judgment is one, therefore, which ought not to be reversed except for some palpable error which would afford a dangerous precedent. Nothing has been shown which would justify us in reversing the judgment.

The petition for a rehearing is overruled.