STATE OF IOWA, Appellee, v. GRANT BROWN, Appellant.

**Criminal law:** ADULTERY: EVIDENCE: CORROBORATION. The presence
1 of one charged with adultery in the vicinity of the home of his paramour is not sufficient evidence to connect him with the commission of the offense, which occurrence the paramour states took place some time afterward and some distance away.

**Same.** Recent intimacy is competent corroborating evidence in cases of adultery, but it must be shown independently of the evidence of defendant's paramour.

**Same.** A letter addressed to the paramour of a defendant charged with adultery is rendered admissible by her testimony that it was written by him, when corroborated by a document shown to be in his handwriting and offered for comparison, and is sufficient to take the question of its authorship to the jury.

**Same.** To justify a conviction for adultery on the testimony of a profligate and corrupt accomplice, given in the hope of immunity from punishment, the corroborating evidence must be clear and unequivocal. In this case the corroborative evidence is held insufficient to justify conviction.

**Evidence:** SCOPE OF CROSS-EXAMINATION. On a prosecution for adultery the defendant should be permitted to cross-examine his paramour with respect to her expectation of immunity from prosecution.

*Appeal from Mahaska District Court.*—HON. B. W. PRESTON, Judge.

THURSDAY, FEBRUARY 17, 1910.

THE defendant appeals from a judgment of conviction on charge of adultery.—*Reversed.*

*John N. McCoy* and *F. E. Gordon*, for appellant.

*H. W. Byers*, Attorney-General, and *C. W. Lyon*, Assistant Attorney-General, for the State.

WEAVER, J.—The indictment charges the defendant with the crime of adultery with Julia Dow, wife of the prosecuting witness, N. L. Dow. The principal evidence relied upon by the State to sustain a conviction of the defendant is found in the testimony of his alleged paramour Julia Dow, who admits the fact of the alleged

adultery, and lends her aid to the prosecution. While numerous exceptions are argued by counsel for appellant, we think those of real merit, are the sufficiency of the evidence and more especially the sufficiency of the corroboration.

As the chief witness, the one without whose testimony a verdict of guilty could not be sustained, is the alleged paramour and accomplice of the defendant, the rules of law and the dictates of common fairness demand that her accusation have corroboration from some other and presumably more credible and more wholesome source. Does the record present such corroboration? As was said on the former hearing, this is "the serious question in the case." Let us inquire briefly into such of the so-called corroborating circumstances as do not depend in any degree on the testimony of this woman. The offense for which defendant was convicted is alleged to have been committed on September 29, 1908. One witness, a neighbor, testified that in July of that year she was making her way along the street in the direction of Mrs. Dow's residence, and saw the defendant go into an empty house a block or two from the Dow home, and again in September she saw him enter an alley still further away. There is not the slightest evidence that Mrs. Dow was in or near the "empty house," or in or near the alley mentioned at the time appellant was seen to enter there, or that his presence in these places had any bearing upon the matter of his alleged illicit relations with her.

It will hardly do to say that the presence of a man upon a public street anywhere within two or three blocks of the home of an immoral woman is evidence tending to connect him with the commission of an adultery which she swears took place at a subsequent date three and one-half miles away in the country. There is doubtless a degree of propinquity in such cases to which a man may not approach

1. CRIMINAL LAW: adultery: evidence: corroboration.

without incurring just suspicion, but we feel warranted in saying that its geographical area was unduly extended by the trial court. The evidence referred to had no tendency to corroborate the story of Mrs. Dow and should have been excluded.

Aside from the evidence to which we have just referred, there is absolutely no circumstance of alleged corroboration shown which does not depend for its proof in whole or in part upon the testimony of Mrs. Dow. For instance, there is an effort to show that on the day of the alleged offense defendant drove out with her in a covered carriage in the direction of the alleged place of the adultery, taking a road leading past the home of the woman's daughter. Mrs. Dow so testifies, and the daughter swears that she saw a carriage of that kind pass but did not see or recognize either of the persons in it. Again she swears to adultery with the defendant in Lucas County several years prior to the alleged act in Mahaska County which is charged in the indictment. No other person testifies anything whatever in corroboration of this statement. It is manifest that, if we look to the daughter's evidence alone, it in no manner tends to identify the defendant as an occupant of the carriage which passed the witness's house, and to consider the testimony of Mrs. Dow as to his identity in this connection is to say that she may be corroborated by herself. The same may be said as to her statement as to their relation in former years in Lucas County. It rests upon her story alone, and affords no help whatever by way of corroboration. That proof of recent intimacy would be legitimate corroborating evidence may be conceded (see *Boyd v. State* [Ohio] 90 N. E. 355), but to be so considered it must be shown by testimony other than that of the paramour.

One other circumstance presents the only other debatable question upon the sufficiency of the corroboration.

2. SAME.

Mrs. Dow produced, and the State put in evidence, certain alleged written communications signed
**3. SAME.** "Bud," and addressed to her in somewhat endearing terms. She testified that they were written to her by the defendant. No other witness identified the handwriting as defendant's, but a written document shown to be in his writing was offered to enable the jury to make a comparison between them. Though this evidence is of proverbially weak and inconsequent character, it was still admissible and sufficient to take the question as to defendant's authorship of the letters to the jury; yet, after considerable reflection, we reach the conclusion that conceding the sufficiency of such proof, and that the letters were written by him, they furnish no corroboration tending to connect him with the offense charged in the indictment. As to one letter on which the greatest stress has been laid, there is nothing outside of the woman's story to show when it was written, or when or where it was received, or, indeed, that she was the person to whom it was addressed. None of the writings contain any admission of adulterous relations. They show the desire of the person writing to meet the person addressed, and, assuming that they were written by a man to another man's wife, they are evidence of impropriety of conduct, but, unless by force of construction we read into their language a double or hidden meaning, they do not prove more, and, under the admitted circumstances of this case, we think they fall short of that corroboration which the law requires to sustain a conviction of the alleged felony.

While the credibility of witnesses and the truth of corroborating testimony, if any, are for the jury alone to determine, yet where the main proposition in the State's
**4. SAME.** case rests solely upon the testimony of an admittedly profligate and corrupt accomplice testifying as the witness appears to have done under a promise or hope of immunity from punishment, we think

it within the province of the court to hold that, in order to justify a conviction, the corroboration required by law shall not be of an uncertain or equivocal character. It has become a proverb the truth of which is frequently demonstrated that charges of sexual crime are easily made, but are defended against with difficulty, and, while this fact furnishes no reason for permitting the escape of the guilty, it does furnish a very potent reason why great care should be taken that the processes of the law be not perverted into instruments of irreparable wrong. The cases are very rare in which these rules appear more pertinent than in the one at bar. It is the claim and the testimony of Mrs. Dow that illicit relations had existed between her and the defendant to a greater or less extent for several years, and that for several months prior to the date named in the indictment they had on several occasions, in the daytime, left their homes in town, and made their way to the city "scavenger grounds," where intercourse was indulged in. Except as her story may find indirect support in the suitableness of the trysting place, it is, as we have already seen, without a shadow of support from the mouth of any other witness. The wronged husband whose jealous sensibilities would naturally render him watchful of the company kept by his wife does not pretend he ever saw them together at his home or elsewhere. According to all precedent, such shameless course of conduct can not long be pursued in any community without attracting the attention of neighbors and acquaintances, but the State produces no witness who claims to have seen them in each other's company by day or by night, or to have seen anything in the conduct of either which necessarily or by fair implication tends to show mutual inclination to adultery. Proof of mere opportunity is ordinarily admissible, but we have often held that it does not afford the corroboration required by law. Here proof of the opportunity even is lacking.

In view of this feature of the record, we deem it unnecessary to further pursue the discussion, except to say that the court unduly narrowed the range of cross-examination of Julia Dow. This is especially

5. SAME: scope of cross-examination.

true where the defendant sought to elicit from her the fact whether she was testifying with the hope or expectation of immunity from prosecution or punishment. The examination should have been allowed.

For the reasons stated, a new trial must be ordered, for which purpose the judgment of the district court is reversed and cause ordered remanded.—*Reversed.*