State of Iowa, appellee, v. Albert Ladehoff, appellant.

No. 50960.

(Reported in 122 N.W.2d 829)

JULY 16, 1963.

REHEARING DENIED OCTOBER 15, 1963.

Lee J. Farnsworth, of Denison, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, and L. V. Gilchrist, Crawford County Attorney, for appellee.

THOMPSON, J.—The defendant was indicted by the grand jury of Crawford County for the crime of rape, alleged to have been committed on May 7, 1962. Trial to a jury in the Crawford

District Court resulted in a verdict of guilty. Judgment was entered on the verdict, sentence imposed, and the defendant appeals.

The rape charged was forcible, alleged to have been committed against a young married woman, the mother of three small children ages three, two and one. Her husband was a truck driver whose work often took him from home overnight. This was the situation on the night of May 7-8, 1962. She was alone in her home except for the three children. The defendant and his family lived next door to the east; she describes it as "across the yard." The next nearest neighbor lived some distance to the west; how far away does not appear. The record does indicate, however, that these houses were in the outskirts of the city of Denison, and the neighborhood was sparsely settled.

The prosecutrix testified that on the night in question she had been working in her home, and about 10:30, being tired, she had lain down on her bed. At the time she was wearing her working clothes, consisting of a blouse, a pair of levi shorts and undergarments. She went to sleep, and shortly was awakened by someone who pulled the pillow from under her head and threw it over her face. She said she fought it off, and then described the struggle that took place and its culmination in sexual intercourse, against her will and in spite of her resistance. Her shorts were forcibly removed during the struggle, and her blouse was torn at the neck or shoulder. When the invader finally left, she seized a dress and one of the children and ran to the Ladehoff home next door, where she saw a light. The defendant was not at home. She put on the dress after Mrs. Ladehoff admitted her to the house. Not long after the defendant came home. Relatives and the sheriff and police officers were called, and the prosecutrix was taken to a hospital at Carroll, where she remained for some days.

She had left a night-light burning when she lay down, but when she was awakened the house was dark. The officers who investigated found that a fuse, or plug, had been pulled out in the basement so that all lights in the house were disconnected. They also found a window which was not locked and evidence

that someone had entered there, as shown by dirt on the sill which resembled a partial footprint.

Other facts will be related as we discuss the errors assigned by the defendant. These are many, and it will not be possible to go into each of them in detail, or to analyze the numerous authorities cited. We shall, however, give attention to those which have any semblance of merit.

I. The fact of the commission of the offense of rape may be established by the testimony of the person attacked. State v. Lahmon, 231 Iowa 448, 451, 1 N.W.2d 629, 631, and citations. In the case before us, the prosecutrix testified that she identified the defendant as her attacker. The defendant thinks her testimony was subject to many contradictions; but these matters were for the jury and we shall not further discuss them. It should be kept in mind, however, that the State was not bound to depend solely upon the testimony of the prosecutrix to establish the fact that a crime had been committed; it might show other evidence, direct or circumstantial, to that effect. This it did. Some of this evidence, as we shall later point out, not only was admissible as tending to prove the commission of the crime, but as connecting the defendant with it. Bruises and other evidences of injury to the person of the one attacked, and a prompt complaint of the attack, are admissible to confirm the commission of the crime, although they are not corroboration of the complainant's identification of the accused. These things appear here, with others which we think have some probative effect as corroboration of the defendant's guilt as the perpetrator of the offense.

Evidence either tending to show the commission of the crime or to connect the accused with it may be circumstantial. State v. Taylor, 196 Iowa 1015, 1020, 192 N.W. 294, 295. Indeed, it is in the nature of things that most of the evidence in these cases, except for that of the prosecutrix herself, will be such. Rape is not often committed in the public gaze, or before eyewitnesses. It is not a spectator crime.

II. The defendant assigns error in the admission of certain testimony of the prosecutrix, and of exhibits offered by the State. The complainant said that immediately after the at-

tacker left her home she ran to the house of the nearest neighbor —that of the defendant—and he was not at home; but she saw a white car driving away down the road. The defendant owned a light green colored car, as to which there was evidence it might look white after dark. Concededly, the defendant was not at home during the time fixed by the prosecutrix when the assault took place, nor when she arrived at his residence. We think this evidence admissible as part of the history of the affair, the res gestae. The rule is thus stated in 22 C. J.&S., Criminal Law, section 712, pages 1210, 1211: "* * * a weapon or instrument found in the possession of accused or of his criminal associates which, although not identified as the one actually used, is similar in form and character thereto, or which, from the circumstances of the finding justifies an inference of the likelihood of its having been used, is admissible for the purpose of showing availability to accused of the means of committing the crime in the manner in which it is shown to have occurred or for the purpose of showing preparation."

We quoted this with approval in State v. Bales, 246 Iowa 446, 450, 68 N.W.2d 95, 97, and cited other authorities, including State v. Taylor, 196 Iowa 1015, 1020, 1021, 192 N.W. 294, 296.

██ The same rule applies to the exhibits admitted, which included a blouse, a glove, a rag and a hooded sweat shirt. The complainant testified that she was wearing the blouse at the time of the attack; that it was not torn before, and when she took it off at the hospital it had a tear in the shoulder. There is some confusion in her testimony as to the condition of the blouse before and after the attack, but we think the record sufficiently shows in effect that the tear was not present before and was there after. She could not of course corroborate herself by this testimony within the meaning of the statute, section 782.4, Code of 1962; but she had a right to testify to anything that went to her credibility or was directly connected with the assault.

The same authorities support the admission of the rag, the glove, and the hooded sweat shirt. The prosecutrix testified that at the time of the assault the attacker was wearing a hooded sweat shirt, and had a glove on one hand and a rag wrapped

round the other. She told the sheriff of this; and afterward the officer searched the defendant's car and found a rag, a glove and a hooded sweat shirt in it. It is true there are many hooded sweat shirts and many gloves, of the type found; and it would be impossible to identify them as the same ones which she said were worn by the assaulter. But they were admissible in evidence. In State v. Taylor, supra, quoted with the approval in State v. Bales, supra, we said: "It is true, of course, that there are many red bandana handkerchiefs, revolvers, flashlights, and suits of overalls. No one can positively identify a revolver, probably, unless the number is taken. These articles were shown to be similar to those used in the home of prosecutrix, as she testifies. The finding of several articles of the same character in the defendant's home very soon after the crime is, as said, a combination of circumstances which is significant and quite persuasive. We think that the identification of the handkerchiefs and gun, and of the other articles, for that matter, was sufficient to permit their admission in evidence."

We shall discuss these matters further in connection with the defendant's claim of lack of corroboration, infra.

As to the rag, there is still more support for its admission. It was evidently torn from a piece of goods which had a distinctive design printed upon it. The complainant identified it as a rag which had been lying in her home before the assault. Her testimony on this point is contradicted by the defense; but it was for the jury to decide whom it believed.

The defendant says that the testimony such as that of the prosecutrix that she saw the car leaving the scene was rejected by this court in State v. Brown, 146 Iowa 113, 116, 124 N.W. 899, 900. The admissibility of the evidence itself was not in issue there. The sole question was whether it was sufficient corroboration of an accomplice. We are not at this point discussing corroboration. We find no error in the admission of the evidence discussed in this division.

III. Error is predicated upon the admission of a statement from the complainant that she struggled "to the best of my ability." She told in considerable detail of the attack and her resistance, both on direct and cross-examination. We are

unable to agree there was error in permitting the answer above set out. The prosecutrix was competent to testify that the act was done without her consent. 75 C. J. S., Rape, section 48, page 521; Epps v. State, 216 Ga. 606, 118 S.E.2d 574, 578, certiorari denied 368 U. S. 849, 82 S. Ct. 81, 7 L. Ed.2d 47; Lewis v. State, 154 Tex. Cr. 329, 226 S.W.2d 861, 864. We see no distinction between statements by the complainant that she did not give her consent, and that she resisted to the best of her ability. This is particularly true when the acts of resistance were gone into at length.

IV. A photograph of the defendant, taken on the morning of May 9, perhaps a day and one half after the alleged rape, was admitted in evidence, and he thinks this was error. The prosecutrix testified that during the struggle she bit her attacker on the neck; and the photograph shows a mark, in the nature of a discoloration or abrasion of the skin, there. There is dispute in the evidence as to whether the mark, which concededly was present, resembled a bite or a suction abrasion or discoloration. The complainant said she bit him; the sheriff thought it looked more like a suction mark; and the defendant himself said his dog had bitten him. The photograph was admissible. There is no claim that it did not fairly depict the mark on defendant's neck; the only dispute is as to what caused it. The picture tended to strengthen the testimony of the prosecutrix; the evidence as to what caused it was for the decision of the jury, which was the judge of the credibility of the evidence. State v. Ebelsheiser, 242 Iowa 49, 55, 43 N.W.2d 706, 710, 19 A. L. R.2d 865.

V. The defendant assigns error upon the refusal of the trial court, upon objection by the State, to permit him to inquire of the complainant whether the doctor who treated her after the attack was in the courtroom. The doctor had not been and was not called by the State as its witness. We fail to see how this could have prejudiced the defendant's case. That the doctor was readily available and was not called must have been evident. Whether he was in the courtroom or in the neighboring city of Carroll, where he practiced, could have had no bearing on the question. It was evident the State had not elected to call

him, and the defendant was entitled to make such profit from that fact as he saw fit. He made no offer of proof as to what the answer would have been, and this is generally an essential for one who seeks to predicate error because he has been denied an answer from a witness which he thinks important to his case. It is interesting to note, however, that in the case before us the question had been answered, "No, he is not.", before the State lodged its motion to strike, which was sustained. We fail to see anything prejudicial to the defendant here.

VI. It is asserted that the showing of resistance and want of consent by the prosecutrix was insufficient. We have said above that she went into great detail in telling of her struggles. No good purpose would be served by setting out here her story of what took place in her home. The defendant says in argument that "Division III [dealing with this question] is urged here chiefly to call this court's attention to the improbability of prosecutrix' story." We content ourselves with saying that this was a matter solely for the jury to determine.

VII. We come next to the most serious problem in the case, whether the testimony of the prosecutrix was sufficiently corroborated to generate a jury question upon that issue. Section 782.4, supra, says: "The defendant in a prosecution for rape, or assault with intent to commit rape, or enticing or taking away an unmarried female of previously chaste character for the purpose of prostitution, or aiding or assisting therein, or seducing and debauching any unmarried woman of previously chaste character, cannot be convicted upon the testimony of the person injured, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense."

We have dealt with this in cases almost innumerable. It would be impossible to discuss and analyze each of them within the practicable length of this opinion. State v. Lahmon, 231 Iowa 448, 449–454 inclusive, 1 N.W.2d 629, 630–632 inclusive, contains an exhaustive résumé of many of the cases and the rules applicable. It is there said: "The 'other evidence' need not certainly connect the defendant, nor conclusively point him out as the assailant. It need only 'tend' to connect him with the com-

mission of the offense, to the end that the jury may say that they have no reasonable doubt of his guilt." Loc. cit. 231 Iowa 449, 1 N.W.2d 630. Many authorities are cited to this effect. In Chapman v. Chapman, 181 Iowa 801, 816, 165 N.W. 96, 101, we stated the rule: "It is not required that the corroborating evidence shall be of itself strong enough to prove that charge. It need but tend in some degree to establish the fact sought to be proved."

Facts vary so much in the numerous cases that they are generally of small value as precedents. In Wigmore on Evidence, Third Ed., Volume VII, section 2059(e), page 334, we find this: "The requirement of corroboration leads to many rulings as to sufficiency, based wholly upon the evidence in each case; from these no additional development of principle can profitably be gathered. As recorded precedents of Supreme Courts, they are mere useless chaff, ground out by the vain labor of able minds mistaking the true material for their energies."

■■■ We must look at the record in the case at bar to determine whether there was any evidence which tends to corroborate the complainant's testimony. She said that the defendant wore a hooded sweat shirt and had a glove on one hand and a rag wrapped around the other at the time of the attack. She told the sheriff about these matters; and shortly after, a hooded sweat shirt, a glove and a rag were found in the defendant's automobile. It is not denied that he was driving this car on the night of the alleged attack. We think the finding of the articles in his car furnishes some corroboration; something that tends to connect him with the assault. It is true that in State v. Potter, 243 Iowa 970, 54 N.W.2d 516, we held that finding a roll of adhesive tape in the defendant's car after an attack in which the complainant testified her hands and eyes had been bound with such tape was not sufficient corroboration. In State v. Lahmon, supra, we said that the fact that bobby pins were found in the defendant's automobile 12 days after the assault was insufficient. In State v. Fletcher, 246 Iowa 452, 68 N.W.2d 99, two hammers and a satchel were found in the defendant's apparent possession some two and one-half months after a burglary had been committed. An accomplice testified these were the hammers used in

commission of the crime. But he also said that he put one hammer in defendant's yard, and that a third person took the other hammer back to the hotel where he stayed. There was no testimony that the defendant Fletcher had directly used any of the articles.

On the other hand, we held in State v. Taylor, 196 Iowa 1015, 1019, 1020, 192 N.W. 294, 295, 296, that the finding of a revolver, a pair of overalls, a flashlight, and two bandanna handkerchiefs in the defendant's room shortly after the alleged attack was proper corroboration; the prosecutrix having testified that the attacker was armed with a revolver resembling that found; that he had a small flashlight and part of his face was masked with a bandanna handkerchief; and that he was dressed in overalls when he first entered her room. The case is much like the one before us, on these facts. Here we have the evidence of the wearing of the hooded sweat shirt, the glove and the rag. It is true there are many similar sweat shirts, and gloves like the one found are manufactured and sold by the thousands. But as we pointed out in the Taylor case, there may be a "combination of circumstances" which entitles the jury to reach the conclusion that they corroborate the accuser's story. Loc. cit. 196 Iowa 1020, 192 N.W. 296. It may be that in some cases the finding of articles similar to those used in the commission of a crime in the possession of an accused does not tend to connect him with the offense, because only one such article is found, because of lapse of time between the crime and the discovery, or for other reasons. But here we have the testimony of the accused and of the sheriff that she told him of the wearing of the hooded sweat shirt, the glove, and the rag before he had found them in the defendant's car. We think the fact that there were three of these articles found in his possession shortly after the attack, but after the complainant had described them to the sheriff, had a fair tendency to connect the defendant with the commission of the crime in the minds of reasonable jurors.

There is, however, more. The prosecutrix told of biting her attacker on the neck, and he had an abrasion or discoloration there. His own statement to the sheriff was that he was bitten by his dog; the sheriff did not think it looked like a bite

at all; and his wife thought it was a suction mark which she had placed there to "tease him", as she expressed it. So we have three different explanations of the source of the mark: the prosecutrix' that she bit him in trying to defend herself; the defendant's that he was bitten by his dog; and his wife's, corroborated to some extent at least by the sheriff, that she placed it there. Under such circumstances, a false story told by the defendant to explain or deny a material fact against him is in itself some indication of guilt. We so held in the recent case of State v. Tornquist, 254 Iowa 1135, 1144, 1145, 120 N.W.2d 483, 489. We there quoted with approval, and followed State v. Feltes, 51 Iowa 495, 499, 1 N.W. 755, 759: "If he had lied about it, it was a circumstance against him."

 There is another and even more significant matter appearing in the record which furnishes corroboration. An officer of the Denison police department who was called to the scene on the night of the attack testified that after inspecting the inside of the prosecutrix' home he went outside. The ground was soft and he discovered a footprint which was clear and he started to place a board across it to cover it. The making of moulages of footprints is a recognized and often effective means of criminal investigation. The defendant was present when the prints were observed by the officer, and he "raised his foot up and said, 'Those are not mine'. And myself I couldn't say whether they were or not because——so I started to cover it up with a board and just like he'd try to step in it when I covered it up." Then followed this question and answer: "Q. Well, did he step on them? A. Across the edge of it, yes." This is the testimony of the officer.

At the time, the defendant had not been accused of the crime. His haste to assert that the footprint was not his, and his successful effort to destroy its outlines are in themselves corroboration of his connection with the offense. In State v. Taylor, supra, the defendant lied to the arresting officer as to the whereabouts of a revolver and flashlight; attempted to prevent him from going upstairs, and then tried to remove the knotted and folded handkerchiefs from his overall pockets. We held these acts to be circumstantial and corroborating evidence.

██ It is said in 23 C. J. S., Criminal Law, section 812 (4), pages 116, 117, that sufficient corroboration may be found by the suspicious conduct of the accused. In this category come attempts to avoid detection, such as concealing or destroying evidence.

Another matter of some importance here arises through the testimony of the accuser that during the struggle with her attacker she believed she tore his trousers. There is evidence that he was the next morning observed by the sheriff to be wearing trousers torn from the crotch to the knee. He denies and explains this; but it was a jury question. The entire combination of circumstances is such that we must hold there was ample evidence of corroboration for the jury's consideration.

██ VIII. Error is assigned because of claimed misconduct of the prosecuting attorney in including in an objection the charge that the defense counsel was "grandstanding". No objection to the use of the term was made at the time, no mistrial was asked because of it, and the matter was in no way raised in the lower court. The assignment is apparently an afterthought; nor if it had been raised would we be inclined to think any prejudicial harm resulted to defendant's case.

██ IX. Next the defendant complains because the trial court in ruling on the admissibility of evidence on two occasions stated its reasons therefor; in each case, that it was admitted on the question of corroboration, and on one occasion that the matter being inquired into was part of the res gestae. The court at no time expressed any opinion as to the weight of the evidence or the merits of the case. See State v. Jensen, 245 Iowa 1363, 1368, 66 N.W.2d 480, 483, and authorities cited. The defendant's complaint at this point is much weakened also by the fact that upon other occasions he asked the court to give the reasons for its rulings, and was told the evidence was admitted as tending to show defendant's connection with the offense.

██ X. Strenuous complaint is made that the evidence of the State is so bizarre, incredible, untruthful (and many other adjectives), that it was unworthy of belief by reasonable men and the verdict was manifestly against the weight of the evidence. We have examined the record carefully, and are not per-

suaded of the soundness of this argument. It is true the evidence is in conflict; but we find nothing so improbable in the State's case that we may interfere. The weight of the evidence, its credibility and truth were for the jury's decision. That is the reason for juries.

XI. The defendant assigns error upon the refusal of the trial court to give instructions requested by him, and upon the denial of his exceptions to instructions given. Some of his requested instructions were given in substance. As to those denied and the matters covered by his exceptions, we think his complaints are hypercritical and without merit, and no good purpose would be served by discussing them in detail.

XII. The sentence of the trial court committed the defendant to the State Penitentiary at Fort Madison for a period of forty years. It is now urged that this is excessive. The permissible sentence for the offense of rape, as fixed by section 698.1 of the Code of 1962, is imprisonment for life or any term of years not less than five. The court's sentence is thus within the limits of the statute. Under these circumstances we will not interfere, in the absence of a showing that the court abused the discretion vested in it. We find no such showing here. If the State's case was to be believed—and we are unable to agree with defendant that it was so fantastic and discredited that it could not be believed—the trial court acted within the bounds of the statute in assessing the penalty. State v. Holoubek, 246 Iowa 109, 111, 66 N.W.2d 861, 862, and citations.

XIII. We have searched the entire record in accordance with the provisions of section 793.18, Code of 1962, and find no error. The defendant had a fair trial.—Affirmed.

All JUSTICES concur.