James L. FOSTER, Petitioner-Appellant,

v.

STATE of Iowa, Respondent-Appellee.

No. 84–1474.

Court of Appeals of Iowa.

Aug. 29, 1985.

Emil Trott, Jr., of Barrett & Trott, Des Moines, for petitioner-appellant.

Thomas J. Miller, Atty. Gen., and Marcia Mason, Asst. Atty. Gen., for respondent-appellee.

Considered by OXBERGER, C.J., and SNELL and HAYDEN, JJ.

OXBERGER, Chief Judge.

The petitioner has raised a number of alleged errors in the court's decision to deny postconviction relief regarding the trial and appeal of two convictions. The petitioner says trial and appellate counsel in a sexual abuse charge were ineffective, as well as trial and appellate counsel in an assault charge. We affirm the trial court.

In 1983 this court affirmed petitioner's conviction on a charge of third-degree sexual abuse and another conviction of assault while participating in the felony of kidnap-

ping. *State v. Foster,* 339 N.W.2d 172 (Iowa Ct.App.1983).

In the sexual abuse trial, petitioner, James Foster, was charged with sexually assaulting one of two women he picked up hitchiking. The victim's companion positively identified Foster, and the victim tentatively identified him from a photo spread and in a lineup presented to both witnesses. In court the victim stated the defendant "resembled" the man who assaulted her but could not positively identify him. A doctor who treated the victim was not cross-examined concerning the possibility that test results tending to show recent sexual intercourse could have resulted instead from menstruation. There was some testimony concerning a pair of sponge rubber dice and a T-shirt seized from petitioner before objection was made to their admission as exhibits. Various items of physical evidence were destroyed and clothing worn by the victim was returned to her two months after the crime occurred, approximately six months prior to filing of the trial information. The jury found Foster guilty after deliberating several days and being told by the judge to continue to try to reach a verdict. Two motions for mistrial during deliberations were denied.

In the separate assault case Foster was accused of driving his pickup truck to where a couple was walking, pointing a gun at them, and ordering them into the back of the truck. He was not identified as the attacker by the victims until the next day when they saw Foster's truck and wrote down the license number. We determined in Foster's appeal that the marshalling instruction was proper, but no objections were made to the contents of various other instructions. *Id.* Foster's former attorney in the sexual abuse case testified at trial regarding matters tending to corroborate his alibi defense.

Foster claims error by his trial and appellate counsel in both cases. In the sexual abuse case he says trial counsel was ineffective in: (1) failing to cross-examine adequately the State's expert witness; (2) failing to attempt to suppress evidence of the

pair of sponge rubber dice and T-shirt, asserting there was improper foundation to allow admitting the evidence; (3) failing to object to the victim's in-court identification; (4) failing to move to dismiss the trial on the grounds possibly exculpatory evidence was destroyed; (5) failing to object to an allegedly suggestive lineup; and (6) failing to discover whether jurors were unduly influenced by a television show appearing during a break in deliberations. He says his appellate counsel was ineffective for failing to raise the issues of: (1) the court's failure to declare a mistrial when the jury could not reach a verdict; (2) failure to declare a mistrial based on a juror's statements; (3) insufficiency of evidence regarding petitioner's identity; and (4) ineffectiveness of trial counsel.

Trial counsel in the assault case was ineffective, Foster claims, in: (1) failing to object to jury instructions which misstated the offense and did not define general intent; (2) failing to object to the language of instruction 13; (3) failing adequately to investigate the case; and (4) failing to consider the prejudicial effect of the testimony of Foster's former counsel. Inadequate representation was provided by appellate counsel, he continues: (1) in its failure to raise improper overruling of his motion to suppress identification testimony; and (2) not objecting to omission of a definition of general intent from the instructions.

Our standard of review is de novo pursuant to Iowa Rule of Appellate Procedure 4, however, since constitutional issues have been raised we look at the totality of the circumstances involved. *Polly v. State,* 355 N.W.2d 849, 854 (Iowa 1984). Petitioner must make a strong showing that his counsel was ineffective. This standard is set out by the Supreme Court at *Strickland v. Washington,* 466 U.S. 668, ——, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674, 698 (1984). There the court stated the petitioner must prove the counsel failed to perform an essential duty as defined by an objective standard of reasonableness, and that there is a reasonable probability that, but for the errors, the result of the proceedings would

be different. *Id.* Petitioner must overcome a presumption that counsel is competent. *Sims v. State,* 295 N.W.2d 420, 423 (Iowa 1980). While failure to preserve error may amount to ineffective assistance, such error is rarely found to rise to the degree of error as to deny a defendant his right to effective assistance of counsel. *State v. Halstead,* 362 N.W.2d 504, 508–09 (Iowa 1985). Further, a reasonable decision regarding trial strategy does not necessarily amount to ineffective assistance simply because the results sought are not obtained. *State v. Newman,* 326 N.W.2d 788, 795 (Iowa 1982); *Sims,* at 423.

■ The right to effective assistance also applies to counsel on appeal. *Sims,* at 424. As with trial counsel, an attorney is allowed to determine the· strategy to use and is not required to raise every colorable issue at the risk of burying good arguments. *Jones v. Barnes,* 463 U.S. 745, 752–54, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987, 994–95 (1983).

### I. Sexual Abuse Conviction.

### A. Effectiveness of Trial Counsel.

#### 1. Cross-examination of State's Expert Witness.

Foster claims that his trial counsel did not properly examine Dr. Richard Avalon, who testified regarding tests made in an examination of the victim following the rape. He stated the test for acid phosphatase showed the victim had engaged in intercourse within the past twenty-four hours. It is undisputed that the victim was menstruating at the time and trial counsel confirmed he knew that there would be elevated acid phosphatase because the victim was menstruating. Foster says the error occurred when counsel cross-examined the witness, but did not ask him whether the elevated phosphatase could have occurred, not because there had been sexual intercourse, but because the victim was menstruating.

Counsel says he did not ask the question because petitioner's defense was alibi, and whether the victim had sexual intercourse did not pertain to the defense. Foster replies by stating that counsel should then not have cross-examined the witness at all.

■ We believe the actions on the part of counsel fall within the realm of trial strategy. Counsel James Ramey attempted to discredit the witness to a certain degree, but decided it was in his client's best interests not to pursue the matter further. Even if the actions of counsel could be considered error, we cannot find that it so prejudiced the defendant that the results would be different, considering the amount of evidence available in addition to the test for acid phosphatase indicating there had been a rape. The test for the presence of sperm was positive, there was irritation to the vagina, the victim was bruised, and her skirt was torn. We cannot find counsel was ineffective in this regard.

#### 2. Admission of Dice and T-Shirt as Evidence.

■ Foster's claim that Ramey was ineffective in not timely objecting to evidence of a T-shirt and dice taken from Foster is without merit. The victim described the T-shirt as green and having a pocket. The victim's friend said the T-shirt was dark green or blue. The victim said a pair of dice hanging from the assailant's rearview mirror appeared to be black, and the dice introduced at trial were green with black dots. Foster says the jury improperly saw the exhibits before the objection was made.

Despite the court's original ruling that the dice could not be admitted into evidence, the court later admitted the exhibit after petitioner's wife testified the dice had been in her husband's car. The court allowed the T-shirt admitted into evidence despite counsel's objections. The jury saw the evidence as admitted exhibits and it is irrelevant whether they were seen prior to the objection.

#### 3. Identification Testimony.

In court the prosecution asked the victim whether she saw the person who assaulted her. She replied, "No, I don't." The pros-

ecutor then asked, "Is there anyone here in court who bears a resemblance to that man?" She replied, "Yes, there is," and pointed out the petitioner.

Foster says his trial counsel should have objected to the second question, since it was prejudicial and wrongfully misled the jury to believe the issue was resemblance, not identity of the assailant beyond a reasonable doubt.

▉ The basis for deciding whether information is relevant is whether an inference is more likely with the evidence than without it and whether it has an undue tendency to support a decision on an improper basis. *State v. Hall*, 297 N.W.2d 80, 87–88 (Iowa 1980); *cert. denied*, 450 U.S. 927, 101 S.Ct. 1384, 67 L.Ed.2d 359 (1981). The State says the testimony of the victim was probative of the identity of the accused as the assailant and it did not unduly prejudice him, since the jury was aware she stated he resembled the attacker. Her inability to identify positively Foster as the attacked was understandable, the State says, since he had shaved his beard and mustache and cut his hair since the date of the offense.

▉ The supreme court has stated that whether testimony of a rape victim as to the identification of the defendant is contradictory is an issue to be decided by the jury. *State v. Ladehoff*, 255 Iowa 659, 122 N.W.2d 829, 832 (1963). The inability to identify positively the attacker goes to the weight of testimony, but not its admissibility. *See Brown v. State*, 10 Md.App. 462, 468, 271 A.2d 182, 185 (1970) (photograph selected as person resembling murderer, although witness could not make a positive identification, admissible for what it was worth); *People v. Bunker*, 22 Mich. App. 396, 408, 177 N.W.2d 644, 650 (1970) (inability to identify gun goes to weight of evidence and not admissibility). We believe this was an issue that appropriately was presented to the jury and counsel was not ineffective for failing to object.

## 4. Destruction of Possibly Exculpatory Material.

A number of items of physical evidence were taken from the victim the evening of the attack. These included, *inter alia*, hair samples, fingernail scrapings, and a cigarette package. These items were intentionally destroyed sometime after November 11, 1980, two months after the assault. The victim's jeans, sweatshirt, and other clothing were also released to her. Foster was not arrested until April 14, 1981, and consequently the items were not available for his inspection and testing. He says his counsel erred in not attempting to dismiss the charge because of destruction of the evidence, which was potentially helpful to his defense.

▉ Intentional destruction of exculpatory evidence can be a violation of due process. *See, e.g., State v. Brown*, 337 N.W.2d 507 (Iowa 1983). An instruction to the jury may be warranted that it may infer the evidence was unfavorable to the prosecution. *State v. Langlet*, 283 N.W.2d 330, 333 (Iowa 1979).

▉ The usual remedy for failure to reveal exculpatory evidence is not dismissal of the charge, but a new trial. *Id.* at 332. However, a new trial is not warranted if the evidence is destroyed. *Id.* Instead, the defendant is allowed a "spoliation" instruction to the effect an inference is made that the evidence was exculpatory. *Id.* at 333. Even the instruction is not warranted, however, if the manner of destruction of the evidence does not amount to an admission by the State of the weakness of its case. *Id.* There is no due process violation if the exculpatory nature of the evidence is not known before it was destroyed. *California v. Trombetta*, 467 U.S. 479, ——, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 422 (1984).

▉ In this case, the exculpatory nature of the material could not be known since no one had been charged with the crime at the time it was returned to the victim or destroyed. The victim said she wanted the clothing returned since she

thought her assailant would never be caught. Unlike the situation condemned in *Langlet* and *Trombetta,* this is not an instance where the evidence was intentionally destroyed so that the State's case would be strengthened and the defendant's case weakened.

Further, the evidence was not used by the State and was revealed to the jury on cross-examination. There is no evidence any of the samples were tested by the State. The only tests occurred on the swabs taken for acid phosphatase and sperm. The petitioner never denied the presence of acid phosphatase or sperm and instead sought to use the other evidence to prove he was not the attacker. This is not a situation where the State was allowed the benefit of using the evidence, and the defendant denied his chance to rebutt. At the most, defendant could have obtained an instruction, but under the dictates of cases on point, he was not entitled to that. Since nothing could have been gained, there was no error by counsel in his failure to move to dismiss on these grounds.

### 5. Identification Evidence.

Foster complains that the identification evidence against him was already weak and that the lineup from which the victim's friend identified him was unduly suggestive. Among the complaints he asserts are that only the defendant and one other man of the six subjects were blond, although the assailant was described as having reddish blond hair. The other blond man had a tattoo which allowed the victim's friend to eliminate him. In addition, numbers were placed around each man in the lineup, hung from a chain around their necks. The number identifying defendant hung lower on his neck than did the numbers on the other men. Foster also says the identification was unreliable, since the victim's friend was not sure the attacker had a beard since she only saw him in profile, and described the car as a green or yellow Plymouth, when the car impounded was a gold Dodge. Further, the dice were described as black, when the ones confiscated were green. He concludes his counsel was ineffective in not moving to suppress the identification evidence.

■ We are not convinced that the evidence would have been suppressed if an objection had been made. This court has viewed the lineup photo and we do not find it unduly suggestive. Although Foster described the picture as including only two blond men, the witness at trial stated in her description of the photo that all but two men were blond, and it is a close question. If a lineup includes persons of similar height, weight, and general appearance, it is not suggestive. *United States v. Prescott,* 480 F.Supp. 554, 561 (W.D.Pa.1979). Claims of significant differences go to the weight of the evidence, not necessarily the admissibility. *State v. Newman,* 326 N.W.2d 788, 794 (Iowa 1982).

There was a considerable amount of other evidence tending to identify the defendant as the assailant. The victim's friend positively identified the defendant from a photo array five months before the lineup. This valid identification reduces the possibility the lineup resulted in improper identification by the woman. *See United States v. Morgan,* 559 F.2d 397, 398–99 (5th Cir. 1977). The description of the cigarettes, dark-colored sponge rubber dice in the car, and the dark green T-shirt matched those seized from the petitioner. The other aspects of the physical description also matched Foster. The car was identified as that driven by the assailant. The court takes into account evidence which shows that a piece of evidence which is one color during the day may look different when it is dark. *See, Ladehoff,* 122 N.W.2d at 832.

■ Considering the evidence identifying the petitioner as the victim's assailant, we find he did not suffer prejudice from his counsel's failure to object to the identification evidence nor that the results would be different if the motion to suppress had been made.

### 6. Television Show.

The jury sent a note to the judge during deliberations indicating they were split on

the question of petitioner's guilt. The jury recessed for the weekend, and on Sunday, July 19, 1981, the show "A Case of Rape" was aired. It was described as the story of a woman who is humiliated by the dehumanizing aspects of the judicial system and law enforcement agencies following her rape. That Monday the jury found Foster guilty. Foster says Ramey erred in not investigating whether exposure to the show influenced the jury after he told Ramey about the airing of the program.

Foster's statement that the jury was affected by the show is speculation. At the postconviction hearing, no juror affidavits or testimony were presented which would suggest any juror watched the show. Ramey said he did not feel it would be significant to a juror if he or she watched the program, and that in any event he did not want to underscore any impact the program might have.

■ Such a decision is a strategical choice on the part of counsel and we cannot say that it is a choice which no reasonable attorney would make. Rather than viewing a news program which purported to tell the facts of the case they were deciding, the jurors, if they did view the show, saw a program which dealt in general terms with rape. As the State points out, such viewing is part of the juror's life experiences brought to the deliberations with them and inhering in the verdict.

## B. Sexual Abuse Appeal.

The jury deliberated five hours when the first motion for a mistrial was raised by counsel. The second motion followed one and one-half days of deliberation. Foster says the appellate counsel should have raised the issue of denial of the mistrial.

■ The length of time to allow a jury to deliberate is within the trial court's discretion and there is error only if the verdict is coerced. *State v. McNamara*, 325 N.W.2d 288, 291 (S.D.1982). It is not improper to direct the jury to continue deliberations. *State v. Dreessen*, 305 N.W.2d 438, 440 (Iowa 1981). In addition, it appears from a statement by a juror during polling that part of the delay occurred because the juror initially held the State to a higher burden of proof than required. The juror stated, "I misunderstood the Judge. I think when he said if there is any reason you are not sure beyond, I thought it was any doubt, but it is a reasonable doubt."

■ Foster also says that because of this statement, it was improper not to grant a mistrial and error for appellate counsel not to raise the issue. The statement by the juror shows that if there was any initial prejudice by the juror, it was in petitioner's favor. Further, such matters inhere in the verdict. *Harris v. Deere & Co.*, 263 N.W.2d 727, 730 (Iowa 1978). Another court has stated that where a juror unnecessarily explains delay in reaching a verdict, there is no reason to grant a mistrial. *People v. Bradley*, 62 Mich.App. 39, 42, 233 N.W.2d 177, 179 (1975).

Foster's other claims of error by appellate counsel involve issues we have already discussed. He says insufficiency of identification should have been raised. As we have indicated, the question was to be decided by the jury. It appears unlikely such an appeal would have been successful, and counsel was entitled to chose the best arguments to present on appeal.

Foster also claims his appellate counsel should have raised the issue of trial counsel's ineffectiveness. Since we have determined trial counsel was not ineffective, such a claim by appellate counsel would also have failed.

## II. Assault Conviction.

### A. Assault Trial.

#### 1. Instructions.

The petitioner says his trial counsel should have objected to the instructions given since they did not state a definition of general intent. Further, Instruction No. 13 stated: "Where specific intent is an element in a crime ..." but did not say specific intent was an element of the crime with which petitioner was charged.

Instruction No. 13 conforms to Iowa Uniform Jury Instruction No. 215. Elsewhere, Instruction No. 11 defined the intent to confine secretly. The jury was also given an interrogatory which required it to decide which type of specific intent, if any, applied to the case. Clearly, then, the jury knew specific intent was required and what the specific intent was. Further, cases have indicated that the word "specific" does not have to be included in the instruction. *State v. Doughty,* 359 N.W.2d 439, 441 (Iowa 1984).

We held in the prior appeal in this matter that the marshalling instruction was proper and the jury was "fully instructed" regarding the elements of the crime. *State v. Foster,* 339 N.W.2d at 172. This includes the element of intent. We also find it difficult to believe the jury could find the defendant had the requisite specific intent to confine secretly, and yet not have the general intent to do the acts he carried out.

██ We do not find the instructions prejudiced the petitioner for the reasons set out above, and for those delineated at *State v. Blackford,* 335 N.W.2d 173 (Iowa 1983). There the court said:

> In applying these principles to the present claim of ineffective assistance of counsel, we are convinced that not every right to insist that a particular instruction be given need be availed of by counsel in order to satisfy the standard of normal competency. In arguing over what elements should be included in a marshalling instruction, defense counsel's primary concern will necessarily be those elements which are essential to the theory of the defense which is being advanced in the particular case. In this regard, defendant urges that exclusion of any essential element from the marshalling instruction makes it easier for the State to secure conviction and that therefore any omission of this type is prejudicial to a defendant. The facial appeal of such an argument is diminished in those situations where practical considerations make it unlikely that the inclusion of a particular element in the marshalling instruction would have produced any difference in the verdict of the jury.

*Id.* at 178. The defense here was alibi, and the elements to which defendant objects do not directly apply to his defense. We find petitioner's claim of ineffective assistance in this matter is without merit.

## 2. Investigation.

The two victims in the assault testified there were lights near the pickup truck that approached them, and witnesses were questioned regarding the lighting at the time of the crime. Foster's counsel went to the scene during the day. Nevertheless, petitioner says his counsel should have gone to the scene of the crime at night to determine for himself the lighting conditions.

██ While there is a duty of counsel to investigate on behalf of his client, that duty is not limitless. *Schrier v. State,* 347 N.W.2d 657, 662 (Iowa 1984). The information counsel would have obtained if he had gone to the scene at night as well as during the day would have had nominal impact upon the case.

## 3. Former Counsel's Testimony.

During the assault trial the counsel for petitioner in the sexual abuse case, Ramey, testified on Foster's behalf. Foster now says the prejudicial effect of this testimony was not adequately weighed by trial counsel, since it let the jury know that Foster had been accused of another crime.

██ The jury was already aware that Foster was accused in another crime since he had testified at trial and was impeached with his prior felony conviction. Petitioner's wife in her testimony referred to her husband's need of Ramey as an attorney. Foster was also benefited by Ramey's testimony, since Ramey helped corroborate Foster's alibi defense. We do not agree Foster was prejudiced by use of Ramey's testimony.

### B. Assault Appeal.

#### 1. Identification testimony.

 Foster once again says his appellate counsel should have raised the issue of failure to overrule a motion to suppress identification testimony. He says the State was inconsistent in the matter because it argued Foster attempted to confine the couple secretly, pointing to the fact the rear window of the pickup was obscured by a mural, and yet argued the couple could see him well enough to identify him. This ignores the fact the couple saw him not from the rear window, but from an open side window. In addition, appellate counsel does not have to use a "shotgun" approach and instead may choose what he believes to be the best arguments to present on appeal. *Jones v. Barnes*, 463 U.S. at 752–54, 103 S.Ct. at 3313, 77 L.Ed.2d at 994–95.

#### 2. Instructions.

Foster finally argues that the general intent issue was missing from the instructions. In the sexual abuse case and this case, Foster's defense was alibi. As we discussed more fully above, the fighting issue was not intent, but whether the petitioner was at the scene of the crime. *See Blackford*, at 178. Here again, the jury found specific intent to confine and it is inconsistent to find specific intent without finding general intent.

We find that trial and appellate counsel in both convictions were not ineffective as defined in *Strickland* and affirm the trial court denial of postconviction relief in all respects.

AFFIRMED.