STATE OF IOWA, Appellee, v. EARL W. LINDSAY, Appellant.

Jurors: DISQUALIFICATION: EVIDENCE. Where a juror testified upon his
1  examination that he could render an impartial verdict under the
   evidence and the instructions of the court, he was not disqualified,
   even though he had formed a preconceived opinion concerning the
   guilt or innocence of the defendant from reading the papers and
   from common rumor.

**New trial:** MISCONDUCT OF BAILIFF. The fact that a bailiff in charge
of the jury talked with one of them regarding the difficulties of the
jury in understanding the instructions of the court, and made the
statement that if the jury desired to have the instructions explained
it would have to be in open court and in the presence of the at-
torneys, nothing being said about the merits of the case, was not
such misconduct on the part of the bailiff as to require a new trial.

**Criminal law:** RAPE: CORROBORATION: EVIDENCE. Evidence that de-
fendant was seen driving away from the place where the alleged
crime of rape was committed; that no one else was present who
could have committed the crime; that there were automobile tracks
leading toward the highway from the place where prosecutrix said
that defendant stopped his machine; and that defendant had the
opportunity, which was of his own making, to commit the crime,
was sufficient corroborating evidence to take the case to the jury.

**Same:** REASONABLE DOUBT: INSTRUCTION. An instruction that the state
is not required to prove defendant's guilt beyond all doubt; that
is absolute certainty is not required. Moral certainty is all the
law demands; such certainty as the jury would act upon in the
more important affairs of life, was not prejudicial to defendant,
where reasonable doubt was correctly defined in other parts of the
instruction.

---

*Appeal from Jasper District Court*—HON. BYRON W. PRES-
TON, Judge.

TUESDAY, APRIL 8, 1913.

DEFENDANT was indicted, tried, and convicted of the
crime of rape, and, from a sentence for life, appeals. *Affirmed.*

*M. R. Hammer, Jr.,* and *J. M. Parsons,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,*
Assistant Attorney General, for the State.

DEEMER, J.—This is the second time the case has been
before us. The opinion on the former appeal will be found

in 152 Iowa, 403. The facts are quite fully set forth in that opinion, and need not be repeated here. The reversal was for an error in the instructions, and that error was not repeated upon the retrial of the case. The propositions now relied upon are: (1) Error in overruling a challenge to a juror; (2) error in an instruction given by the trial court; (3) misconduct of the bailiff, having the jury in charge, during their deliberations; and (4) insufficiency of the corroborating testimony.

I. The challenge of the juror was based upon his preconceived opinion as to the guilt or innocence of the defendant. The testimony taken on the *voir dire* does not indicate that the juror had ever formed or expressed an unqualified opinion as to the guilt or innocence of the accused. True, he had read an account of the transaction in the newspapers, and had heard the matter discussed around the town of Newton, and had formed some sort of an opinion as to the guilt or innocence of the defendant. But in response to questions by the court, the juror said:

1. JURORS: disqualification: evidence.

Q. Did you ever talk with any one who claimed to personally know the facts in the case? A. I couldn't say that I did. Q. It was just general common rumor or talk that you heard; is that all? A. Yes, just discussions. Q. And your idea of it was all they said was true? A. And what I read. Q. You read some in the newspapers? A. Yes, sir. Q. At about the time? A. Yes, sir. Q. Do you know what papers you read it in? A. In the Newton Herald and perhaps the News or Capitol. Q. Do you remember now what you read? A. Well, I couldn't repeat it. Q. You just have a general impression, is that what you mean, as a person would have from regarding the article? A. Yes, sir. Q. Did it make any particular impression on your mind? A. Well, I don't know as I could say; but I think any one reads anything like that has an opinion to a certain extent. Q. What I want to know Mr. Robinson, is— Of course we want jurors who are entirely impartial between both sides, so they can sit here and hear this testimony, and, under the instructions of the court,

render a verdict of the court as to the law; do you believe you could do that? A. Yes, sir. Q. Have you any doubt about it in your own mind? A. No, sir. Q. None at all? A. No, sir.

From this examination it clearly appears that the trial court did not abuse its discretion in overruling the challenge. *State v. Butler,* 155 Iowa, 204; *State v. Heft,* 155 Iowa, 21; *State v. Hassan,* 149 Iowa, 518, and cases cited.

II. Although a little out of order, we shall next consider the alleged misconduct of the bailiff. This consists not so much in what was said as in the fact that he had a conversation with some of the jurors, aside from 2. NEW TRIAL: misconduct of inquiring as to whether or not they had bailiff. agreed upon a verdict. It is not contended that the bailiff said anything about the merits of the case or about the reason for any disagreement between the jurors. The chief complaint is that the jurors, or some of them, were induced to refrain from asking the court for further instructions.

This excerpt from the record will disclose the basis for the claim of misconduct. One of the jurors was examined and testified as follows:

Q. Did he [bailiff] say anything to you asking what you boys were making a noise or racket about in the jury room? A. I don't know as he asked in a direct way what we were talking about; we walked along, and I think after we got past the corner there, if I remember right now, we got to talking, and I made the remark, 'A tiresome job,' or something of that kind; and I says, 'It is my first experience, and I hope it will be the last one;' and I says, 'It is something that a man don't have any idea of what he is going into until he gets in there;' I says, 'We had quite a little time of it in there last night;' and I says, 'We was all ignorant as bulls;' that is the very remark I made in regard to the law; and I says, 'There was lots of words we couldn't hardly pronounce in the instructions, let alone understand them;' and I says, 'We had no dictionary to explain them to us, and we thought for a while we would ask for a dictionary;' and then some says, 'We don't know whether that will be granted or not;' and then I says to him,

'I thought for a while that we would ask the judge to explain some of those things, thought we might ask him to explain them to us;' there was no addition to anything, simply an explanation of the instructions he had already given, and, if I remember right, he says, 'You couldn't do that without bringing it into open court,' he says, 'and calling the attorneys on both sides and taking it into open court.' Q. Did he say anything there of there being quite a lot of legal machinery? A. What do you mean by that? Q. Well, quite a job to get them all in? A. I don't remember of him saying anything in regard to that. Q. Did he say anything about that had to be pretty careful with it; that it had been to the Supreme Court once? A. Not to me. Q. Did you hear anything of that kind said? A. No, sir. Q. Well, during any of this talk, did he say anything to you about what you were jangling about? A. No, sir; he never asked me what we were jangling about. Q. You went on and told him all of this stuff you have said? A. Yes, sir. Q. And then he went on and told you what you said he did? A. Yes, sir; he told me just what I mentioned here. Q. Did he say anything about he thought you could agree if you went back and tried, or deliberated upon the case? A. No, sir; the matter was stopped right there, and we didn't talk no more about it on our route. Q. Mr. Ward didn't talk to you any about the merits of the case as to how you should decide it, or anything of that kind? A. No, sir; I should say not. Q. And the jury never made any additional request for instructions? A. No, no.

While the bailiff did not observe the obligations of his oath, we see nothing here prejudicial to the defendant, and his motion for a new trial, based upon misconduct of the bailiff, was properly overruled. *State v. Cowan,* 74 Iowa, 53; *State v. Wart,* 51 Iowa, 587.

III. The commission of the crime may be established by the testimony of the prosecutrix herself, but, before there may be a conviction, she must be corroborated by other evidence tending to connect the defendant with the commission of the offense. Code, section 5488. It is contended that there is not sufficient corroborating testimony. We cannot agree with coun-

3. Criminal law: rape: corroboration: evidence.

sel in this contention. There was testimony to the effect that defendant was seen driving away, from near the place where the crime was committed at a rapid rate of speed; that no one else was present who could have committed the offense; that there were automobile tracks leading toward the highway from the place where prosecutrix said that defendant stopped his machine; that defendant had the opportunity for committing the crime; and that this opportunity was of his own making and some other circumstances more or less controlling, but still pointing out the defendant as the guilty man. These were sufficient to take the case to the jury. *State v. McGhuey*, 153 Iowa, 308; *State v. Waters*, 132 Iowa, 481; *State v. Crouch*, 130 Iowa, 478; *State v. Norris*, 127 Iowa, 683; *State v. Stevens*, 133 Iowa, 684; *State v. Clough*, 111 Iowa, 714; *State v. Ralston*, 139 Iowa, 44; *State v. Bricker*, 135 Iowa, 343.

IV. The only serious proposition in the case relates to one of the instructions given by the trial court, reading as follows:

The term 'a reasonable doubt,' as used in these instructions, means what the words imply; a doubt founded in reason. It does not mean a captious, strained, or unnatural doubt, nor one raised by some forced or unnatural meaning given to the evidence, or one which is manufactured from sympathy for a defendant, or to excuse the acquittal of one of whose guilt there is no reasonable doubt; but it means a doubt which, without being sought after, fairly and naturally arises in the mind, after a fair and candid consideration of all the evidence in the case, both for the state and for the defendant. If, after such consideration, the minds and consciences of the jurors are not firmly and abidingly satisfied of the defendant's guilt, the doubt is a reasonable one, and you should acquit. *The state, however, is not required to prove the defendant's guilt beyond all doubt; that is, absolute certainty is not required. Moral certainty is all the law demands; such certainty as you would act upon in the graver and more important affairs of life.*

4. SAME: reasonable doubt: instruction.

The italicized portions of this instruction are complained of, and it must be conceded that there are many cases holding such an instruction erroneous. See, among others, *People v. Bemmerly,* 87 Cal. 117 (25 Pac. 266); *Lovett v. State,* 30 Fla. 142 (11 South. 550, 17 L. R. A. 705); *Jane v. Commonwealth,* 2 Metc. (Ky.) 33; *State v. Oscar,* 52 N. C. (7 Jones, Law) 305; *Bradley v. State,* 31 Ind. 505; *Leonard v. Territory,* 2 Wash. T. 381 (7 Pac. 872). But quite as many cases hold such an instruction correct or at least nonprejudicial. *Giles v. State,* 6 Ga. 276; *State v. Bridges,* 29 Kan. 138; *McGuire v. People,* 44 Mich. 286 (6 N. W. 669, 38 Am. Rep. 265); *State v. Gleim,* 17 Mont. 17 (41 Pac. 998, 31 L. R. A. 294, 52 Am. St. Rep. 655); *Lawhead v. State,* 46 Neb. 607 (65 N. W. 779); *People v. Hughes,* 137 N. Y. 29 (32 N. E. 1105)'; *Miles v. United States,* 103 U. S. 304 (26 L. Ed. 481); *Territory v. McAndrews,* 3 Mont. 158; *Hopt v. People,* 120 U. S. 430 (7 Sup. Ct. 614, 30 L. Ed. 708); *People v. Dewey,* 2 Idaho (Hasb.) 83 (6 Pac. 103); *Jarrel v. State,* 58 Ind. 293; *Garfield v. State,* 74 Ind. 60. Contra: *Brown v. State,* 105 Ind. 385 (5 N. E. 900); *Polin v. State,* 14 Neb. 540 (16 N. W. 898).

From this confusion of cases, we turn to our own pronouncements and find that in *State v. Nash,* 7 Iowa, 385, this court said: "The tenth instruction asked by the state and given by the court was that 'if the whole evidence, taken together, produced such a conviction on the minds of the jury, of the guilt of the prisoner, as they would act upon in a matter of the highest importance to themselves, in a like case, it was their duty to convict.' We think this instruction of the court was not liable to the objection taken to it by the defendant, and was proper under the circumstances to be given." The instruction here referred to is very much like the one given in the case at bar; the only difference we see is in the use of the words "in a like case." It is a little difficult to understand this phrase as it appears in the instruction; but we think it adds nothing to the sentence in which it is

found to what appears in the instruction given in this case.

In ᐧState v. Pierce, 65 Iowa, 85, a somewhat similar instruction is approved.

In State v. Schaffer, 74 Iowa, 704, we find the following:

The following instruction was also given: 'A reasonable doubt is one which fairly and naturally arises in the mind after considering all of the evidence and carefully examining the whole case. If you are then not so satisfied and convinced of defendant's guilt that you would act upon that conviction in matters of the highest importance to yourselves, you should give the defendant the benefit of your doubt, and acquit; if you are so satisfied, you should convict him.' Exception was taken to the last two sentences of this instruction. In State v. Nash, 7 Iowa, 347, and State v. Ostrander, 18 Iowa, 435, however, instructions to the same effect were approved by this court, and the doctrine of the instruction has been the accepted rule on the subject in this state since the latter case was decided. But it was contended that the instruction was disapproved in State v. Pierce, 65 Iowa, 85. But the language of that opinion relied on was used merely by way of concession, for the purposes of the case. The effect of what is there said is that, if the true rule is as was contended by counsel, it was sufficiently expressed by the instruction under consideration when all of its language was considered. But we had no intention of overruling the former cases, and, when all of the instructions in the present case are considered, they are quite as favorable to defendant as was the charge in that case.

In Ostrander case, referred to in the foregoing quotation, the court said:

The remaining instruction is as follows: 'No. 35. The evidence must satisfy the jury, beyond a reasonable doubt, of the guilt of the prisoner. The doubt, however, must be actual, substantial, rational, and conscientious, and not mere speculation. Everything relating to human affairs, and depending upon human testimony, is open to some possible or imaginary doubt. If the whole evidence, taken together, produces such a conviction on the minds of the jury, of the guilt of the prisoner, as they would act upon in a matter of the

highest importance to themselves in a like cause, it is their duty to convict.'' To the first sentence the defendant makes no objection. The second sentence is clearly correct, is in accordance with the uniform tenor of the authorities, and is neatly and perspicuously expressed. The third sentence is almost literally extracted from the opinion of Chief Justice Shaw in *Dr. Webster's* case, 5 Cush. [Mass.] 320, (52 Am. Dec. 711). The fourth sentence substantially adopts the definition or description of the reasonable certainty necessary to convict, given by Chief Baron Pollock in *Rex v. Manning* and wife, cited in Wills on Criminal Evidence 210; 3 Greenl. Ev. section 29, and note. And the idea therein conveyed is approved, and almost the same language as in the instruction of the court is used to express that idea by Mr. Starkie in his Treatise on Evidence (volume 1, Page 578 [7th Am. Ed.], in prior editions page 514), and is also approved by this court in *State v. Nash and Redout,* 7 Iowa, 347, 385. Reasonable certainty or reasonable doubt is not a little difficult to prescribe. We never thought the description or illustration of it, which is immediately under consideration, particularly happy or of essential value as a guide to a jury. But it is not erroneous.

Here the words "in a like cause" are introduced, but the import of the words is not entirely clear.

In *State v. Elsham,* 70 Iowa, 531, a similar instruction was held not erroneous; and in *State v. Phillips,* 118 Iowa, 675, an instruction quite like the one now before us was criticised, but held not to be prejudicial. In the two cases last above cited, the qualifying phrase found in some of the previous cases did not appear in the instructions there under consideration. It is always unsafe to attempt a definition of either reasonable doubt or moral certainty, for the reason that these terms are so simple that an attempt to explain them is more likely to confuse than to enlighten. A close analysis of that part of the instruction complained of might justify a jury, if these were the only directions, in finding a defendant guilty upon a preponderance of the testimony.

Where one is confronted with the graver and more

important affairs of life and compelled to act, he generally weighs the matter pro and con and then acts upon his better judgment, which may be bottomed on nothing more than what appears to be preponderating circumstances or conclusions; but the instruction now criticised, taken as a whole, will not bear this interpretation, and we are satisfied that the jury would not, if they had read it as a whole, have so understood it. It has support in the authorities cited, and we are not disposed to reverse the case because it was given. See, also, *State v. Krampe*, 161 Iowa, 48.

Finding no prejudicial error in the record, the judgment must be, and it is, *Affirmed*.

PRESTON, J., took no part.