**STATE of Iowa, Appellee,**

v.

**Donald TAYLOR, Appellant.**

**No. 56780.**

Supreme Court of Iowa.

Oct. 16, 1974.

Carl E. Peterson, Marshalltown, for appellant.

Richard C. Turner, Atty. Gen., Roxanne Barton Conlin, Asst. Atty. Gen., and Richard J. Vogel, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, LeGRAND, and REYNOLDSON, JJ.

RAWLINGS, Justice.

Defendant, Donald Taylor, appeals from judgment on jury verdict finding him guilty of assault with intent to commit rape. We reverse.

The dispositive issue here to be resolved is whether trial court erred in overruling defendant's timely directed verdict motion based on absence of testimony corroborating that of the complainant as to identify of her assailant.

I. At the threshold an understanding of the instantly applicable statute and attendant established guiding principles is in order.

The Code 1971, Section 782.4 provided, in relevant part:

"The defendant in a prosecution for * * * assault with intent to commit rape * *. * cannot be convicted upon the testimony of the person injured, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense."

That enactment was so amended by the 1974 Session, Sixty-Fifth General Assembly, Senate File 1009, Section 2, as to remove the element of corroboration noted above. But this amendment did not become effective until July 1, 1974. See The Code 1973, Section 3.7. Therefore we are here bound by the provisions of § 782.4, quoted above.

II. Mindful of the foregoing we look first to State v. Polson, 205 N.W.2d 740, 741 (Iowa 1973), where this court declared:

"Whether any item of evidence is corroborative, or whether the statutory corroboration as a whole is sufficient, is a question of law for the court, but the weight and the probative force of the testimony is a question for the determination of the jury. (Authorities cited)."

We also said, in State v. Campbell, 217 N.W.2d 251, 253 (Iowa 1974):

"Corroboration, however, need not be strong, it need not go to every element of the case, and it need not point certainly or surely to the defendant. It is enough if the evidence, either direct or circumstantial, tends to connect the defendant with the crime, permitting the jury to say if they are convinced of his guilt beyond a reasonable doubt. (Authorities cited).

"As usual in considering complaints of this kind, we view the testimony in the light most favorable to the state and ac-

cord it every intendment reasonably possible to sustain the jury's verdict. (Authorities cited)."

■ Furthermore, evidence connecting an accused with an offense such as here involved may be circumstantial or found from suspicious conduct. See State v. Polson, *supra;* State v. Ladehoff, 255 Iowa 659, 663, 122 N.W.2d 829 (1963).

■ And opportunity to commit an assault with intent to commit rape, *surrounded by peculiar circumstances tending to single out an accused as the perpetrator,* suffices to create a fact issue as to corroboration.

■ More specifically, where the evidence discloses an accused (1) created the opportunity under circumstances suggestive of ill intent, or (2) was the only person who could have committed the offense, then other supportive testimony apart from that of the prosecutrix is not required. See State v. Escamilla, 182 N.W.2d 923, 924 (Iowa 1971); State v. Lahmon, 231 Iowa 448, 452–453, 1 N.W.2d 629 (1940).

■ On the other hand, mere opportunity alone does not suffice to supply the statutorily required corroboration. See State v. Escamilla, *supra;* State v. Kelly, 249 Iowa 1219, 1224–1225, 91 N.W.2d 562 (1958).

III. So the question now presented is whether testimony by this complainant finds adequate independent support in the record tending to connect defendant Taylor with the offense here charged.

As a preface to further discussion we turn now to the record.

December 9, 1972, at about 12:30 a. m., Sheryl Spading (complainant) and Donna Ribby, ages 16 and 15 respectively, entered a Grinnell laundromat. Miss Ribby was a visitor in the complainant's home. Sometime between 2:30 and 3:00 a. m. defendant and Steven Puls entered the laundromat. There they engaged in conversation with the two girls. Apparently defendant and Mrs. Spading's brother were friends.

Finally, at the suggestion of Taylor and Puls the girls rode with them to complainant's apartment. Mr. Spading, complainant's husband, was not then present.

A short time later, upon defendant's suggestion, the foursome proceeded to "ride around" Grinnell. At approximately 3:30 or 4:00 in the morning Steven Puls and Donna Ribby left defendant's automobile and entered the Puls car. Shortly thereafter defendant and complainant returned to the laundromat so the latter could "use the restroom." In the ensuing half hour to 45 minutes defendant and complainant traveled the Grinnell streets.

Complainant testified that on more than one occasion she asked defendant to take her home. Instead, defendant stopped his car at the east end of Davis Street. As stated by complainant there followed a brief conversation, after which defendant made repeated improper advances with an attendant assault upon her. In the course thereof defendant managed to remove complainant's hiking boots and jeans. Then, with defendant's permission, complainant left the car ostensibly "to go to the bathroom." This was around 5:15 a. m. Clad only in her blouse and underclothing complainant ran through a corn field to a nearby Thermogas plant where Robert Tumilty was working. After being advised as to what had occurred Mr. Tumilty took complainant to the Grinnell Police Station. She was later removed to the hospital for observation.

Tumilty's testimony reveals he saw Mrs. Spading about 5:20 a. m. She was then wearing a mini-dress but no shoes, stockings, slacks or coat and was suffering from exposure to the cold. Her limbs were cut and scratched and her feet looked "like they had frostbite or something."

Beverly Rens, a registered nurse, testimonially stated she assisted in treating complainant at the hospital. Mrs. Rens noted complainant was suffering from a laceration of the left knee and voiced complaint regarding extreme pain in her feet. Police

officer Jerry Holcomb and Mrs. Rens both testified to the effect complainant was emotionally upset.

IV. In resisting defendant's appeal the State contends Mrs. Spading's physical and emotional condition as described by Tumilty, Rens and Holcomb sufficiently corroborates complainant's identification of Taylor as her assailant. We do not agree.

■ This court has repeatedly held bruises and other indicia of injury of one attacked serve to confirm the commission of a crime but do not qualify as corroboration of a complainant's identification of an accused as the assailant. See e. g., State v. Ladehoff, 255 Iowa at 663, 122 N.W.2d 829; State v. Lahmon, 231 Iowa at 451, 1 N.W.2d 629.

■ V. Looking again to the factual situation, Police Officer Darrell Lamb testified he went to the east end of Davis Street shortly after Mrs. Spading had been taken to the hospital. This policeman there found a pair of shoes, jeans, and coat, later identified as belonging to complainant. He additionally observed footprints leading from a corn field, about two-tenths of a mile north of the aforesaid Davis Street site.

The prosecution again urges this effectively corroborates Mrs. Spading's testimony. Cited in support thereof is State v. McElhaney, 261 Iowa 199, 153 N.W.2d 715 (1967).

But McElhaney, supra, is so factually at variance as to instantly be of no persuasive force or effect. There, immediately after having been raped, the prosecutrix noticed her chain-type bracelet and eyebrow stencil were missing. These items were later found in the accused's car. In addressing the corroboration issue this court held the foregoing sufficed to independently single out the accused as the assailant.

Here, however, none of the above mentioned items of apparel belonging to Mrs. Spading were found in defendant's possession or in his vehicle.

Thus the State's instantly voiced argument is devoid of substance. Furthermore, the same result obtains regarding Officer Lamb's observance of footprints leading from a corn field some distance from the involved attack site.

■ VI. Neither is there any evidence upon which to hold defendant deliberately created an opportunity to commit the instantly involved offense under circumstances suggesting ill intent on his part.

In support of its position to the contrary the State apparently leans upon Miss Ribby's testimony. The record discloses she saw complainant and defendant in the latter's car sometime between 3:50 and 4:20 a. m. This means Mrs. Spading and Taylor were last seen together an hour or more before occurrence of the assault.

Conceding existence of an opportunity for defendant to commit the charged offense it still remains such cannot alone suffice to supply the statutorily required corroboration.

Referring again to State v. Lahmon, supra, 231 Iowa at 452, 1 N.W.2d at 632, we there aptly quoted this from State v. Smith, 194 Iowa 639, 645, 190 N.W. 27 (1922):

"'An examination of our cases recognizing this rule will disclose that in each of them there has been something about the creation of an opportunity and the circumstances attending it that, in and of itself, was suggestive, and sufficient, with other circumstances, to take the case to the jury on the question of corroboration.'"

See also State v. Escamilla, 182 N.W.2d at 924; State v. Hook, 242 Iowa 255, 258, 45 N.W.2d 858 (1951).

■ We are satisfied the only fair inference to be drawn from the record is (1) Taylor and his companion Puls desired the companionship of Mrs. Spading and her friend; (2) these two girls readily acquiesced; (3) Puls and Miss Ribby were not asked to leave Taylor's car so he could be alone with complainant; and (4) defendant

never evidenced to Puls or Miss Ribby any evil intent as to complainant. It therefore follows corroboration flowing from any defendant-induced opportunity, coupled with other circumstances connecting defendant with the involved assault was not here shown.

■ VII. This brings us to the State's argument that under existing circumstances no person other than defendant had opportunity to commit the offense charged.

Further reference to the record thus becomes necessary at cost of some repetition.

Unquestionably Taylor initially suggested the two couples go for a ride and he was subsequently alone with complainant. It may thus be said there was a defendant-created opportunity to assault Mrs. Spading.

The record further discloses that prior to said assault complainant was last seen with defendant in his car sometime between 3:50 and 4:20 a. m. And Mrs. Spading was next seen by Mr. Tumilty at bout 5:20 a. m.

In essence the State now argues, since no more than two hours elapsed from the time complainant was last observed with defendant then he was the only one who could have committed the offense. Cited in support of that position are State v. Lahmon, *supra*; State v. Stevens, 133 Iowa 684, 110 N.W. 1037 (1907); and State v. Mitchell, 68 Iowa 116, 26 N.W. 44 (1885). We are satisfied those cases accord no support to the State's stand.

As disclosed in *Lahmon,* 231 Iowa at 461–462, 1 N.W.2d 629, defendant there admitted his presence with the prosecutrix at all times to and until her escape from his car. Additionally, two young men saw the prosecutrix in defendant's presence, immediately after the assault and observed she was crying, trembling, nervous, hysterical and her hair was disheveled. This is patently a factual situation distinguishably unlike that presented in the case at hand.

Also, in *Stevens, supra,* 133 Iowa at 686–687, 110 N.W. at 1037, is this informative statement:

"It affirmatively appeared * * * from the testimony of others than the child that the accused was the only person in the house at the time capable of committing the act. This, in connection with the immediate circumstances corroborating her testimony that the crime was committed at that time, was proof of something more than mere opportunity; for, by excluding the possibility of any one else having committed the offense, and confirming the child's story that it was then committed there under the circumstances, tended to single him out as the real perpetrator."

And in *Mitchell, supra,* 68 Iowa at 117, 26 N.W. at 45, this court singularly observed:

"[T]he undisputed evidence shows that if any one had sexual intercourse with the complainant it was Mitchell, and no one else. He testified that he was the one who drove home with complainant, and the one whom her parents saw with her when she arrived."

In line with the above cited cases is State v. Lindsay, 161 Iowa 39, 44, 140 N.W. 903, 905 (1913), where we said:

"There was testimony to the effect that defendant was seen driving away, from near the place where the crime was committed at a rapid rate of speed; that no one else was present who could have committed the offense; that there were automobile tracks leading toward the highway from the place where prosecutrix said that defendant stopped his machine; that defendant had the opportunity for committing the crime; and that this opportunity was of his own making and some other circumstances more or less controlling, but still pointing out the defendant as the guilty man."

See also State v. Teager, 222 Iowa 391, 397, 269 N.W. 348 (1936).

In the case here on appeal, however, there is not a scintilla of evidence by a third

party placing defendant anywhere near the Davis Street locale at the time in question. Furthermore, Taylor was neither seen in that area by a disinterested person after occurrence of the assault, nor observed in flight from the scene. Additionally, defendant never admitted being with Mrs. Spading on Davis Street prior to, at time of or after the assault and no incriminating evidence was found in his car or elsewhere in his possession. Moreover, the record discloses no circumstantial evidence upon which to hold defendant was present at the time or place here concerned.

VIII. Under existing circumstances we find State v. Howard, 230 Iowa 365, 297 N.W. 821 (1941) and State v. Chapman, 88 Iowa 254, 55 N.W. 489 (1893) are factually analogous and persuasive.

In *Howard, supra,* a witness, Smith, saw defendant and complainant walking through the city park at about 9:45 p. m. Apparently the observed couple had gone to a swimming pool located in the north-east part of town. About 10:45 that same evening Smith met Howard as he was walking through the park from the north-east. This park was about eight blocks from the pool where an alleged rape occurred. In reversing a conviction we said, 230 Iowa at 369, 297 N.W. at 823: "[I]t cannot be said that the evidence shows that the defendant was present at the place where the prosecutrix claims the assault was made except by the testimony of the prosecutrix herself."

Even more on point is State v. Chapman, cited above. There, at the suggestion of defendant, he and his female companion left a railroad right-of-way on which they were walking and entered a field. Defendant there allegedly raped the prosecutrix. Two witnesses testified they saw defendant and prosecutrix together on the railroad property near the time in question. Here again this court reversed a conviction and in so doing held there was no evidence tending to connect defendant with the offense.

In brief, as declared in State v. Smith, 194 Iowa at 646, 190 N.W. at 30: "We have no other alternative than to uphold and enforce that statute [§ 782.4], even though a guilty man may escape punishment. We cannot find in the record in the instant case any such corroboration as the law requires; and it therefore follows that, on the record as made, the appellant was entitled to a directed verdict."

Reversed.