STATE of Iowa, Appellee,

v.

Phillip MANNING, Appellant.

No. 57198.

Supreme Court of Iowa.

Dec. 18, 1974.

Paul E. Watts and Gerald E. Moran, Omaha, Neb. and Noran L. Davis, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Nancy J. Shimanek, Asst. Atty. Gen., and Lyle A. Rodenburg, Pottawattamie County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP, and REYNOLDSON, JJ.

UHLENHOPP, Justice.

This appeal involves rulings made in the prosecution of defendant Phillip Manning

on a charge of depositing an incendiary device.

Section 697.3 of the Code provides in pertinent part:

If any person, with intent to destroy or injure any building . . . deposits . . . in, under, or about such building . . . any . . . incendiary device . . . by the combustion . . . of which any such structure will or will be likely to be destroyed or injured, he shall be imprisoned . . . .

Section 697.10(2) provides:

"Incendiary device" means any inflammable material or container containing an inflammable liquid or material whose ignition by fire, friction, concussion, detonation, or other method is intended to produce destructive effects primarily through combustion rather than explosion.

On August 21, 1973, an assistant county attorney charged defendant with violating § 697.3 by depositing an incendiary device on the roof of a restaurant in Council Bluffs, Iowa. On September 10, 1973, defendant pleaded not guilty and waived trial within 60 days.

Trial was set for October 9, 1973. A number of proceedings occurred before the trial actually went forward. One was a motion in limine by the prosecutor, Mr. David E. Richter, to prevent the defense from going into the matter of a telephone conversation in which the attorneys discussed defendant's naming the person who paid him to burn down the restaurant (if such was the fact) in return for dismissal of the charges against defendant. The court, Kittleman, J., indicated that the conversation between the attorneys would be inadmissible, but defense counsel stated that he wished to seek certiorari if the court sustained the motion and also that the prosecutor filed the motion too late. These proceedings ended thus:

The Court: This is pretty late filing.

Mr. Richter: Okay. Then if the Court will overrule it at least you're apprised so when I make timely objection I can deal with it out there.

The Court: We'll have to meet it. In my opinion it's not permissible but I'll just rule on it as it comes in. Overruled, at the present time.

Trial went forward. At one point in his opening statement, the prosecutor stated that upon defendant's capture by the police, defendant was advised of his rights and said he wanted a lawyer. Defense counsel asked to make a motion.

In chambers, defense counsel moved for a mistrial because of the prosecutor's statement that defendant wanted a lawyer. An extensive argument ensued between counsel as to whether the statement constituted ground for mistrial. Defense counsel insisted that the decisions forbid such a statement, and also that another Iowa district judge had ruled against the prosecutor on this point in another case. The prosecutor, resisting the motion, insisted that his statement, as far as it went, was permissible under the decisions, that the other case was on a different although similar issue, and that the district judge had ruled incorrectly there. The prosecutor cited authority which he contended was in point, sustaining his position.

The court excused the jury overnight. The following morning the attorneys resumed their argument on defendant's motion for mistrial, citing cases found by their research. The prosecutor urged distinctions between defense counsel's citations and the present case.

At the conclusion of the argument, the court held that the prosecutor's statement to the jury was improper. The court sustained the motion for mistrial and re-set the trial as his first case for the following Monday, using the rest of the jury panel.

Thereupon defense counsel stated he desired to file a motion that the case could not be retried because of double jeopardy. He also asked that, in any event, retrial be

continued until the next jury panel reported. That would be in January 1974. Accordingly, the case was continued.

Defense counsel then filed a motion to dismiss the prosecution on the ground of double jeopardy. On October 12, 1973, the attorneys argued that motion before Judge Kittleman, who took it under advisement. On December 12, 1973, he overruled it.

On January 2, 1974, defendant filed a motion to dismiss the prosecution under § 795.2 of the Code on the ground that the case had not been tried within 60 days. On January 11, 1974, after hearing, Judge Sulhoff overruled this motion.

Subsequently, the case came on for retrial (before Harold L. Martin, J.). From the State's evidence the jury could reasonably find, among other things, that defendant placed several large cans containing liquids on the roof of the restaurant in question. The State had the liquids tested by a chemist, Darwin Chapman, who testified that the liquids in some of the cans were consistent with or similar to gasoline and the liquids in other cans were consistent with or similar to fuel oil. As to the liquid which he stated was consistent with gasoline, these questions and answers appear in the record:

Q. I am still not quite clear. Is it gasoline? A. Yes, for all practical purposes it can be called gasoline.

Q. In other words, in scientific language that is consistent with gasoline? A. That is correct.

Then as to the liquid the chemist described as consistent with fuel oil, this appears:

Q. The same is true then for the other Exhibits 9 through 22. You say their characteristics and qualities are consistent with fuel oil or diesel oil? A. That is correct.

Q. Would it be fair to say those are diesel fuel? A. Yes, that would be correct.

On two occasions during the State's case the prosecutor offered into evidence the cans themselves, Exhibits 6 through 11. Both times defendant objected and the trial court reserved ruling. After the State's last witness left the stand, this occurred:

Mr. Richter: The State would rest, Your Honor.

The Court: Just a minute now, there are some exhibits that aren't in unless you have got them all in. Have you got all your exhibits in that you want in?

Mr. Richter: I will offer six through eleven now, Your Honor, which would be the large cans.

The Court: If I am correct, and you gentlemen correct me, we have 24 exhibits that have been offered?

Mr. Richter: True.

The Court: Identified. Now what are you offering at this time?

Mr. Richter: Six through eleven, Your Honor, which are the large cans that the representative samples Mr. Chapman analyzed were taken from.

The Court: Do you have any objection to those being admitted, Mr. Watts [defense counsel]?

Mr. Watts: Now [not?] on the foundation.

The Court: Okay, Exhibits 6 through 11 will be admitted in evidence.

Mr. Richter: The State would then rest, Your Honor.

Defendant then moved for a directed verdict. A ground of the motion was that the State had not adduced substantial proof that the liquids in the cans were inflammable materials as defined by § 697.10(2), which we previously quoted. Defendant also moved for a mistrial on the ground of improper conduct by the trial court in calling the prosecutor's attention to the exhibits not introduced. The Court overruled the motions.

The jury found defendant guilty and the court pronounced sentence. Defendant appealed.

In this court, defendant makes four contentions. First, the second trial constituted double jeopardy. Second, the district court should have dismissed the case because it was not tried within 60 days. Third, the State did not prove the liquids were inflammable materials within the statutory definition. Fourth, the trial court was guilty of misconduct in calling the prosecutor's attention to unoffered exhibits.

█ I. *Double Jeopardy*. Reprosecution for the same offense is permissible when a defendant wins a reversal on appeal from a conviction. Ball v. United States, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300. By the same token, a mistrial declared on a defendant's motion without an appeal is generally no bar to another trial. United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543.

An exception to the Jorn principle exists if the mistrial results from judicial or prosecutorial impropriety designed to avoid an acquittal. After stating that ordinarily a retrial is permissible after a defendant's mistrial motion is sustained "even if the defendant's motion is necessitated by prosecutorial or judicial error," the Court said in note 12 to the opinion in United States v. Jorn, supra, at 485, 91 S.Ct. at 557, 27 L.Ed.2d at 556: "Conversely, where a defendant's mistrial motion is necessitated by judicial or prosecutorial impropriety *designed to avoid an acquittal*, reprosecution might well be barred." (Italics added.) See also note 3 to the opinion in United States v. Tateo, 377 U.S. 463, 468, 84 S.Ct. 1587, 1590, 12 L.Ed.2d 448, 452.

█ We have carefully studied the record on this point. For several reasons we are not persuaded that the prosecutor said what he did in his opening statement in the first trial with the design of incurring a mistrial to avoid an acquittal. First, the prosecutor's extensive argument against the mistrial motion indicates he did not entertain a design to "throw" that trial. Quite the contrary. The motion was contested at length by the attorneys on both sides, and

the prosecutor's remark in opening statement appears to have resulted from overzealous prosecution. Second, Judge Kittleman was on the scene and in the best position to judge the prosecutor's motives. He overruled the double-jeopardy motion. Third, the double-jeopardy motion assumes that the prosecutor caused the trial to abort because he might get a better ruling on his motion in limine from a different judge. But the record contains no indication whatsoever that the prosecutor knew a different judge would rule on the motion in limine another time. In fact, Judge Kittleman re-set the trial as his first case the following Monday. The situation at most involves prosecutorial error, and it comes within the general rule that retrial is permissible. Defendant's first contention is not meritorious.

II. *Trial Within 60 Days*. We will assume arguendo defendant's contention is correct that his original waiver of trial within 60 days applies only to the first trial and that "if the defendant is to be tried again following a mistrial" the 60 days begins "from the date of the mistrial." A.B.A. Standards Relating to the Administration of Criminal Justice, Speedy Trial, § 2.2(c) at 276 (1974). The mistrial was declared on October 9, 1973, so that the 60 days would have expired December 8, 1973. Defendant filed his motion to dismiss on this ground on January 2, 1974, and the district court overruled the motion on January 11, 1974.

█ The difficulty with defendant's contention that he had to be tried within 60 days after October 9 lies in the following words we have italicized in § 795.2 of the Code: "If a defendant indicted for a public offense, *whose trial has not been postponed upon his application,* be not brought to trial within sixty days after the indictment is found, the court must order it to be dismissed . . . ."

When Judge Kittleman sustained defendant's mistrial motion and re-set the trial for the following Monday, defendant wanted the trial "laid over" for the next jury panel,

which would report in January. Accordingly the trial was laid over. Defendant is in no position to complain; he got his wish. See State v. Shockey, 214 N.W.2d 146 (Iowa); State v. Evans, 169 N.W.2d 200, 204 (Iowa) ("Defendant was properly informed against within thirty days and the case was set for trial. It was at his own insistence that the matter was delayed"). We hold that defendant's second contention does not have merit.

III. *Inflammable Materials?* The gist of defendant's third contention is stated thus in his brief: "Chapman was never asked if the substances in question could be ignited 'by fire, friction, concussion, detonation, or other method.' Section 697.10(2). Nor was he ever asked whether the materials, assuming they could be ignited, could 'produce destructive effects primarily through combustion rather than explosion.' *Id.*"

■ Jurors do not abandon their common knowledge about the affairs of the world when they enter the jury box. As this court stated in Purcell v. Tibbles, 101 Iowa 24, 27, 69 N.W. 1120, 1121:

> A man, on entering the jury room, is not expected to banish from his mind knowledge gained from the experiences common to men generally. While the juror must fully and fairly consider all the evidence adduced in the case, and must base his verdict upon that only, still, in arriving at his conclusion, it is his right to so consider and apply such evidence in the light of reason and of those experiences which are common to men generally.

See also Henrich v. Oppedal, 248 Iowa 509, 81 N.W.2d 429. The principle is stated as follows in 89 C.J.S. Trial § 463 at 99: "Matters of common knowledge and experience may be used by jurors in arriving at their verdict and in drawing inferences and reaching conclusions from the evidence." And the editors say in 75 Am.Jur.2d Trial § 1019 at 860: "Jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the

affairs of life, but may give effect to such inferences as common knowledge or their personal observation and experience may reasonably draw from the facts directly proved." As a corollary, trial courts are not required on their own initiative to define ordinary words to juries. 75 Am.Jur.2d Trial § 701 at 641; 88 C.J.S. Trial § 318 at 843.

■ The words here are "inflammable material," "combustion," and "explosion." The materials here "for all practical purposes can be called gasoline" or "are diesel fuel." We think a jury or ordinary intelligence may be permitted to say that gasoline and diesel fuel are inflammable materials without the necessity of an expert telling them so. We think, too, that a jury may reasonably find without expert testimony that the effects of those inflammable materials result primarily from combustion, rather than from explosion—as distinguished, for example, from dynamite or TNT. Cf. Solleim v. Norbeck & Nicholson Co., 34 S.D. 79, 147 N.W. 266 (jurymen aware from own common knowledge that dynamite is explosive). Had the liquids used here been some uncommon chemical not within the knowledge of people generally, we would have a different case. But these are common, well-known materials. In addition, the statutory language consists of ordinary, well-known words. We do not uphold defendant's third contention.

■ IV. *Trial-Court Misconduct?* The State had a number of exhibits. The prosecutor twice offered the cans in question into evidence. Both times defense counsel objected and the court reserved ruling. At the end of the State's case, the trial court asked if the prosecutor had offered all his exhibits, the prosecutor offered the cans a third time, and the court received them in evidence.

Initially, we are not as sure as defendant is that the cans themselves had to be in evidence to make a case; the oral testimony fully developed the case. Nor are we as sure as defendant that the prosecutor had

to offer the cans again. He had already offered them twice; it was up to the court to rule—although perhaps the prosecutor should have asked for a ruling if one was not forthcoming.

But we do not pass upon these matters, for careful examination of the record persuades us that the court did not go beyond its province in doing what it did. It did not prejudice defendant. United States v. Harris, 488 F.2d 867 (8 Cir.). See also State v. O'Kelly, 211 N.W.2d 589 (Iowa); State v. McCarty, 179 N.W.2d 548 (Iowa); Schroedl v. McTague, 169 N.W.2d 860 (Iowa).

The record discloses that throughout this hard-fought trial, the trial court treated both sides courteously and even-handedly. We believe defendant received a fair trial, and we decline to uphold his fourth contention.

We find no error.

Affirmed.