STATE of Iowa, Appellee,

v.

Thomas Lee GRADY, Appellant.

No. 57580.

Supreme Court of Iowa.

July 31, 1975.

Charles F. Glenn and William J. Aylward, West Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Dorothy L. Kelley, Asst. Atty. Gen., and Wallace Taylor, County Atty., for appellee.

Submitted to MOORE, C. J., and REES, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

Defendant's jury trial resulted in a verdict of guilty of assault with intent to commit rape, a violation of § 698.4, The Code. He appeals from judgment sentencing him to confinement in the penitentiary for ten years. We affirm.

To support a reversal defendant raises four grounds which we consider in separate divisions.

I. Defendant asserts trial court erred in overruling his timely motions to dismiss or direct verdict based on State's failure to produce sufficient evidence to corroborate the complainant's testimony as required by § 782.4, The Code.

■ In a case such as this § 782.4 required, *inter alia*, evidence in addition to testimony of the prosecutrix "tending to connect the defendant with the commission of the offense." Although that section has now been repealed (Acts 65 G.A., ch. 1271, § 2 [1974]), the repealer did not become effective until July 1, 1974, slightly over two weeks following defendant's conviction. See § 3.7, The Code, 1973. Thus the corroboration requirement applies here. See State v. Taylor, 222 N.W.2d 439, 441 (Iowa 1974).

The law relating to corroboration under this charge was fully laid out in State v. Taylor, supra.

■ Whether there is sufficient corroboration under § 782.4 is a question of law for the court but the weight and probative force accorded it is a jury question. *Id.* at 441.

■ Corroboration need not be strong, nor go to every element of the case nor point certainly or surely to defendant; it need only tend to connect defendant with the crime sufficiently to permit the jury to find guilt beyond a reasonable doubt. *Id.* at 441.

■ The evidence is viewed in a light most favorable to the State and every intendment reasonably possible is accorded it to sustain the verdict. *Id.* at 441–442.

■ While mere evidence of opportunity is insufficient, an opportunity to commit an assault with intent to commit rape, *surrounded by peculiar circumstances tending to single out an accused as the perpetrator,*

suffices to create a fact issue as to corroboration. *Id.* at 442.

■ Where the evidence discloses an accused 1) created the opportunity under circumstances suggestive of ill intent, or 2) was the only person who could have committed the offense, then other supportive evidence apart from that of the prosecutrix is not required. *Id.* at 442.

Finally, we have noted that because facts differ so greatly, previous decisions are of small value as precedents. State v. Escamilla, 182 N.W.2d 923, 924 (Iowa 1971); State v. Ladehoff, 255 Iowa 659, 668, 122 N.W.2d 829, 835 (1963).

With this reference to the applicable law, we turn to the factual battleground.

The charge grew out of an alleged assault upon an eleven-year-old-girl, Kelley. Viewing the evidence in the light most favorable to the State, the jury could have found the following factual narration established.

For a number of years defendant lived intermittently with Gayle and her four illegitimate children. Kelley was the oldest child. Two sons were ages eight and five. The youngest child, a two-year-old baby girl, was defendant's progeny.

Defendant had sexually molested Kelley from the time she was seven years of age except when he was imprisoned. He had beaten her with a belt to the extent her grandmother complained to the county child abuse authority. The girl had submitted to this treatment without telling anyone because she feared defendant, who threatened to beat her, and because her mother "was on Tom's side."

In 1973 and at all relevant times in 1974 defendant, a parolee, was wanted by law authorities. A warrant for his arrest was outstanding. On Christmas eve in 1973 he was "recognized" near his mother's house and thereafter never left Gayle's home until his arrest.

Defendant had induced Gayle to permit his girl friend, Arlene, and her child, to stay in Gayle's home from October until December 1973, when Arlene left after an altercation with Gayle. Following Arlene's leaving and his enforced restriction to Gayle's home, defendant became increasingly suspicious and troublesome. He got "restless and ornery" and "mean" with Gayle and her children. He put the five-year-old child's head between his knees and squeezed the boy hard enough to make his nose bleed.

When the older children were in school and pre-school, he would not permit Gayle and the baby to leave her home. When the children returned from school Gayle was permitted to run errands but he kept one or more of the children in the home with him, as hostage. He began to carry a switchblade knife. Defendant would not permit the children to play with other children.

On the night of January 29, 1974, defendant entered Kelley's bed and attempted penetration. The next day Kelley, sensing Gayle was no longer "on Tom's side," told her mother about the attack. Gayle, fearful for her children's safety, did not tell the sheriff until a day later. The home was surrounded and defendant arrested.

The next day Kelley was examined by a physician who found she had various vaginal abrasions and contusions. On the basis of his observation the doctor expressed his opinion [without objection] the bruises had been inflicted approximately three days earlier and a rape had been attempted. Black light and subsequent laboratory analysis of the bed sheet upon which the attack occurred revealed evidence of acid phosphatase, a component of male ejaculate.

■ Defendant argues this record discloses only an opportunity to commit the assault and therefore his motions should have been sustained. It is true this court has said opportunity alone will not meet the corroboration requirement, noting "[T]here are many occasions in ordinary business and social relations where men and women are together and an opportunity for the crime is available, but where there is nothing to indicate that the circumstances are other

than proper and innocent * * *." State v. Escamilla, 182 N.W.2d 923, 924 (Iowa 1971); see State v. Lahmon, 231 Iowa 448, 452, 1 N.W.2d 629, 631 (1942). It is also evident this record does not paint a picture of an ordinary business or social relationship. Although the question is close, we believe the peculiar circumstances disclosed by this record furnished sufficient statutorily-required corroboration to permit the jury to pass on the issues.

The exceptional circumstances surrounding defendant's total isolation and terrorization of this household would permit a finding he was the only person in the home at the time and place of the attack who was capable of committing the act. See State v. Stevens, 133 Iowa 684, 686, 110 N.W. 1037 (1907). Defendant effectively guarded the premises from outside contact, even to the point of prohibiting the children from having friends. Finding as we do that this facet of the case tends to connect defendant with the crime beyond mere opportunity, we need not consider whether he "deliberately created an opportunity to commit the * * * offense under circumstances suggesting ill intent on his part." State v. Taylor, supra at 443; see State v. Escamilla, supra at 924.

II. Defendant next contends this cause should have been dismissed because his constitutional and statutory rights to speedy trial were violated. See Constitution of the United States, Amendment 6; § 795.2, The Code. Defendant was arrested January 31, 1974. County attorney's information was filed February 7, 1974. Trial ultimately commenced June 11, 1974.

█ Our review relating to this issue is not de novo. To secure a reversal defendant must show trial court abused its limited discretion. State v. Albertsen, 228 N.W.2d 94, 98 (Iowa 1975); State v. Hines, 225 N.W.2d 156, 160–161 (Iowa 1975); State v. LaMar, 224 N.W.2d 252, 254 (Iowa 1974).

█ We have carefully examined the complete record including the court file, and find trial court did not abuse its discretion in ruling good cause existed for the trial delay.

It would not enhance our jurisprudence to detail the barrage of motions, affidavits and papers launched pro se by defendant commencing four days following the filing of the county attorney's information. He refused court-appointed counsel, interviewed and rejected counsel, filed motions to remove the magistrate for bias and prejudice, to remove two assistant county attorneys for bias and prejudice, to remove the district court judge for bias and prejudice, and for various other relief and procedures.

On February 25 defendant was before the district court, again refused offered counsel and refused to proceed without counsel. On March 4 he was scheduled for court appearance but was hospitalized. On March 21 he appeared with out-of-county court-appointed counsel meeting his approval, waived arraignment and was given ten days to plead.

April 1, defendant's counsel moved for continuance of the April 2 trial date, based upon lack of time for preparation and trial schedule conflict resulting from a previously assigned trial. Defendant volunteered a refusal to join in the motion.

April 2, the request for continuance was granted. Trial court took under advisement defendant's motion for change of venue, filed pro se on March 19.

April 9, an order was entered granting change of venue to Boone county, where trial was set for June 5. Defendant continued to file pro se papers including a "grievance for reduction of bond" and an "affidavit of bias and prejudice" relating to still another district court judge.

May 29, the State moved for continuance on grounds that two witnesses would be unavailable on June 5 and that attempted depositions had been thwarted by defendant's disruptive outbursts. We assume counsel had at least tacitly agreed to take these depositions for use at trial. During subsequent trial defendant in chambers virtually conceded he had caused the deposi-

tions to abort. State's continuance motion was granted and trial commenced June 11.

June 6 and June 11 defendant filed *pro se* motions to dismiss for lack of speedy trial which were overruled. Trial court found, *inter alia*, the delay resulted from a continuance secured by defense counsel. It further found defendant's successful motion for change of venue furnished good cause for delay as the trial assignment in Boone county was already fixed when the case was transferred. Defendant's case was set to commence promptly upon completion of that trial term.

At the threshold we observe defendant by controversies over counsel and hospitalization delayed scheduled arraignment until March 21, 1974. See State v. Lyles, 225 N.W.2d 124, 126 (Iowa 1975).

Here a continuance on defense counsel's motion carrying the case beyond the 60-day limitation was clearly a postponement "upon his [defendant's] application." Section 795.2, The Code; State v. Manning, 224 N.W.2d 232, 235–236 (Iowa 1974).

Defendant now reminds us he then refused to join in the continuance motion and then refused to waive his speedy trial right. It is also apparent he neither requested other counsel nor offered to proceed without counsel. We also note one of the designated reasons trial court granted the motion was to consider defendant's *pro se* motion for change of venue based on community bias and prejudice. The latter motion was thereafter sustained within a reasonable time in view of the fact defendant was still filing supporting papers on April 1. See State v. Manning, supra at 236 ("Defendant is in no position to complain; he got his wish"); State v. LaMar, supra at 254 (accused cannot take advantage of delay for which he was responsible).

There was no requirement defendant "join in" his counsel's motion for continuance. As a general rule a client is bound by the acts of his attorney performed within the scope of the latter's authority. State v. LaMar, supra at 254. In addition, the rule

is "well settled" the right to proceed *pro se* is waived by the accused's failure to *unequivocally* request to act as his own attorney. State v. Smith, 215 N.W.2d 225, 226 (Iowa 1974).

Defendant should not expect, nor shall he be permitted, to file the papers supporting his motion for change of venue the day before trial (and a week before expiration of the 60-day trial period) and then obtain a reversal because he did not receive a ruling, transfer and trial within the original 60-day period. See State v. King, 225 N.W.2d 337, 340 (Iowa 1975).

After the case was reset for June 5 following defense counsel's motion for continuance and defendant's successful *pro se* motion for change of venue, trial court granted the State a brief continuance to secure the presence of witnesses whose depositions defendant aborted.

We find no abuse of trial court's discretion in determining there was § 795.2 good cause for delay of defendant's trial until June 11.

Defendant separately claims violation of his constitutional speedy trial right defined in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). We have considered the circumstances of this case in light of those factors identified as elements of the balancing test in *Barker,* supra. Of those factors, defendant's prejudice by incarceration is the sole factor in his favor. Although he did assert his speedy trial rights, he simultaneously erected time-consuming roadblocks by filing motions and pursuing other delaying action. His constant reiteration of motions already overruled can only be viewed as dilatory. The length of delay under these circumstances was reasonable and entirely consistent with the State's attempts to afford both a speedy and fair trial.

III. Defendant asserts trial court should have granted his motions to dismiss grounded upon failure of the information to charge a crime under Iowa law.

The information accused defendant "* * * of Attempted Rape in violation of Section 698.4 of the 1973 Code of Iowa * * *."

Section 698.4, The Code states, *inter alia*:

"*698.4 Assault with intent to commit rape.* If any person assault a female with intent to commit a rape * * *."

Defendant argues that because all crimes are statutory in Iowa (Wright v. Denato, 178 N.W.2d 339, 341 [Iowa 1970]) and "attempted rape" is not mentioned in § 698.4, the information charged no crime.

 Section 773.4, The Code, is important in weighing the merits of defendant's complaint. Examining the criteria there identified for testing the validity of the information we find the language used in this charge, coupled as it was with the designated code section, is minimally sufficient although certainly not to be recommended.

Moreover, it is apparent the gist of defendant's complaint was an insufficient description of the offense to meet the requirements of § 773.4. The issue thus being one of conformance to code requirements, defendant was required to raise the issue by demurrer (§ 777.2, The Code) and waived the alleged defect by delaying until after the jury was sworn. Section 777.3, The Code; State v. Grindle, 215 N.W.2d 268, 269–270 (Iowa 1974).

IV. Defendant contends trial court's denial of his request for preliminary hearing filed March 29, 1974 violated his rights under the United States Constitution, Amendments 4 and 14. This request was refused on the ground the hearing was unnecessary as the information had been filed.

Following the decision of the United States Supreme Court in Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), this court held that while a probable cause determination is a condition to any significant pre-trial restraint on liberty, failure to provide such a determination does not furnish a ground to void a subsequent conviction. State v. Lass, 228 N.W.2d 758, 763 (Iowa 1975).

In holding *Lass* applies here, we do not condone failures to follow the unequivocal direction of § 761.1, The Code, that a magistrate before whom an arrested person is brought "shall immediately proceed with the preliminary examination, or may allow the defendant to waive the same," nor does this case require us to determine whether an accused has other available remedies upon a denial of his statutory or constitutional rights in this respect.

V. We have carefully examined and re-examined the total record, including the transcript, in this appeal. Defendant was represented by competent counsel who defended ably despite defendant's simultaneous and frequently inept self-help. Trial court throughout displayed that patience and insight which characterizes competent trial management of criminal cases. Defendant received a fair trial. We find no reversible error and therefore affirm.

Affirmed.